[No. 56469-8. En Banc. July 26, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY J. CAMARILLO, *Petitioner*.

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association*, for petitioner.

Norm Maleng, Prosecuting Attorney, and Peter Goldman, Deputy, for respondent.

CALLOW, C.J.—The defendant, Larry Camarillo, was charged by information with indecent liberties with an 11–year–old boy. The charge was brought under former RCW 9A.44.100(1)(b).[1] The 1–count information was based on conduct which occurred over a 1–year period between June 4, 1981, and July 10, 1982. The defendant was convicted.[2]

On appeal the defendant claimed he was denied a fair trial because the State failed to elect which act of three incidents it was relying upon. The 1–count information covered a period during which there was evidence of three distinct commissions of the offense. The defendant further argued that State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984)[3] should be applied retroactively to provide for a jury instruction on jury unanimity when the State presents evidence of multiple acts but only one count is charged. The Court of Appeals affirmed the conviction. State v. Camarillo, 54 Wn. App. 821, 776 P.2d 176 (1989). We granted review.

The boy testified that the defendant accomplished sexual contact on three separate occasions. The first time the boy was at the defendant's house for dinner with his mother.

---

[1]The former RCW 9A.44.100(1)(b) provided:

"A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

". . . .

"(b) When the other person is less than fourteen years of age . . .".

[2]The defendant was convicted on March 6, 1984, of indecent liberties. He fled the state prior to sentencing and was arrested in California on an unrelated charge. Upon Camarillo's arrest in California, it was discovered that there was an outstanding warrant for his arrest in Washington. Between September 6, 1986, and September 16, 1987, Camarillo was in the California prison system. Upon his release from California, the defendant was brought back to Washington by King County authorities. He was sentenced in Washington, on this charge, on October 29, 1987.

[3]Petrich was decided 2 months after Camarillo's conviction.

The boy testified that he was in the defendant's bedroom watching television when the defendant came in and placed him on his lap. The defendant then rubbed the zipper area of the boy's pants for 5 to 10 minutes.

The second incident occurred at the defendant's house. This time the victim was spending the night at the defendant's house because he was babysitting for the boy's mother. On this occasion the boy was on the defendant's bed watching television. The boy testified that the defendant entered, lay beside him on the bed and placed his hand down the boy's pants and fondled him for 5 to 10 minutes.

The third incident occurred at the boy's house and was similar to the first. The boy testified that the defendant came into his bedroom and again sat him on his lap. The defendant then rubbed the zipper area of the boy's jeans.

About a year later the victim told a friend what had occurred because the friend's mother had discussed sharing a residence with the defendant. The victim then told his mother and she informed the police.

When the charge came to trial and the jury was instructed, defense counsel did not request that the State elect which act it relied upon for conviction, nor did the defense request a unanimity instruction.[4]

To convict a person of a criminal charge, the jury must be unanimous that the defendant committed the criminal act. *State v. Stephens,* 93 Wn.2d 186, 190, 607 P.2d 304 (1980); *State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963). In cases where there is evidence of multiple acts of like misconduct which relate to one charge against the defendant, the State is required to elect which act it is relying upon for a conviction. *State v. Workman,* 66 Wash. 292, 119 P. 751 (1911); *State v. Sargent,* 62 Wash. 692, 114 P.

---

[4]To preserve an issue for appeal, it generally must be brought to the attention of the trial court unless the issue is of constitutional magnitude. *State v. Gooden,* 51 Wn. App. 615, 617, 754 P.2d 1000, *review denied,* 111 Wn.2d 1012 (1988); *State v. Gitchel,* 41 Wn. App. 820, 821–22, 706 P.2d 1091, *review denied,* 105 Wn.2d 1003 (1985); RAP 2.5(a)(3).

868 (1911); *State v. Osborne,* 39 Wash. 548, 81 P. 1096 (1905). *Workman* states:

> [W]hile evidence of separate commissions of the offense may be admitted as tending to prove the commission of the specific act relied upon, the proper course in such a case, after the evidence is in is to require the state to elect which of such acts is relied upon for a conviction.

*Workman,* 66 Wash. at 295.

*State v. Petrich, supra,* construed the rule in *Workman* to require the trial court to instruct the jury that all 12 members had to agree that the same underlying act has been proven beyond a reasonable doubt if the State neglects to elect which act constituted the crime. In effect, *Petrich* was a reiteration and clarification of *Workman.* The *Workman–Petrich* rule assures a unanimous verdict on one criminal act thereby protecting a criminal defendant's right to a unanimous verdict. *Petrich,* 101 Wn.2d at 572.

▮ Failure of the court to follow the rule in *Workman* and *Petrich* is "violative of a defendant's state constitutional right to a unanimous jury verdict and United States constitutional right to a jury trial." *State v. Kitchen,* 110 Wn.2d 403, 409, 756 P.2d 105 (1988); *State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963); *State v. Allen,* 57 Wn. App. 134, 788 P.2d 1084 (1990); Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 6. When error occurs during a trial the jury verdict will be affirmed only if that error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Kitchen, supra* at 409.

We turn to whether the failure by the State to elect which of the multiple acts it would rely upon to prove the charge or to give a unanimity instruction was harmless error in this case. *Kitchen* stated the standard of review when there is an error in multiple acts cases which puts jury unanimity in question, as follows:

> In reviewing a multiple acts case in which there has been no election by the State or unanimity instruction by the trial court, the proper standard for determining whether the error is harmless is . . .

> . . . if a rational trier of fact could have a reasonable doubt as to whether each incident established the crime beyond a reasonable doubt.
>
> [*State v.*] *Loehner,* 42 Wn. App. [408,] 411 [711 P.2d 377 (1985)] (Scholfield, A.C.J., concurring) . . . This approach presumes that the error was prejudicial and allows for the presumption to be overcome only if no rational juror could have a reasonable doubt as to any of the incidents alleged.

*Kitchen,* 110 Wn.2d at 411. Thus in multiple acts cases the standard of review for harmless error is whether a "rational trier of fact could find that each incident was proved beyond a reasonable doubt." *State v. Gitchel,* 41 Wn. App. 820, 823, 706 P.2d 1091, *review denied,* 105 Wn.2d 1003 (1985). *See also State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963); *State v. Allen, supra.* Errors of constitutional proportions will not be held harmless unless the "appellate court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" *State v. Burri,* 87 Wn.2d 175, 182, 550 P.2d 507 (1976) (quoting *Chapman,* 386 U.S. at 24).

In *Kitchen,* this court reversed the conviction and remanded for a new trial because "[t]here was conflicting testimony as to each of those acts and a rational juror could have entertained reasonable doubt as to whether one or more of them actually occurred." *Kitchen,* 110 Wn.2d at 412. *State v. Coburn,* 110 Wn.2d 403, 409, 756 P.2d 105 (1988), a case consolidated with *Kitchen,* reversed Coburn's conviction because the testimony of the child victim was impeached and because the jury heard testimony pertaining to Coburn's reputation in the community for truth, veracity and good morals. Furthermore, as in Kitchen's case, the jury heard conflicting testimony "as to each of those acts and a rational juror could have entertained reasonable doubt as to whether one or more of them actually occurred." *Kitchen,* 110 Wn.2d at 412.

In *State v. Petrich, supra,* the defendant's conviction was overturned because this court was not satisfied that the failure of the State to elect error was not harmless due to the child's testimony. The victim in *Petrich* was able to

describe with some detail and specificity the acts commit-
ted against her, but other details were acknowledged "with
attendant confusion as to date and place, and uncertainty
regarding the type of sexual contact that took place." *Pet-
rich,* 101 Wn.2d at 573.

In the present case, the evidence admitted at trial came
from the child victim, his mother, the defendant and an
elderly woman who shared a residence with the defendant
at all relevant times. As to the first incident the boy testi-
fied as to what the defendant had done and the attendant
circumstances.[5]

The second incident occurred at the defendant's resi-
dence when the boy spent the night with the defendant
because the defendant was babysitting for the boy's
mother. Again, the boy's testimony was specific about what

---

[5]The testimony of the child regarding the first incident:

"Q: Can you describe what you remember as the first incident where you felt
uncomfortable?

"A: Well, he—I was in the room watching TV and he came in and he sat
down. He sat me on his lap and he started messing with me.

"Q: Do you remember for what reason you were over at Mr. Camarillo's
house that day?

"A: We ate dinner over there.

"Q: How did you happen to be in Mr. Camarillo's bedroom?

"A: Watching TV.

"Q: And who was in there with you?

"A: I can't remember if anybody was or not.

"Q: Where was Mr. Camarillo?

"A: In the room.

"Q: Where were you sitting in the room when that began to happen?

"A: On his lap.

"Q: How did you get to be sitting on his lap?

"A: He sat me up there.

"Q: What happened then?

"A: He started messing with me.

"Q: What do you mean messing with you?

"A: He started messing with my lower parts.

"Q: What was he using to mess with you?

"A: His hand.

"Q: How long did this happen?

"A: Five, ten minutes.

"Q: You said it was with his hand; what was he doing with his hand?

"A: Just rubbing on me."

had occurred.[6] There was additional corroborative evidence which placed the child with the defendant that night from the boy's mother.[7]

---

[6]The testimony regarding the second incident brought forth the following explanation of what had taken place:

"Q: Did anything like that ever happen again?
"A: Yes.
"Q: Could you describe another—where were you on another time?
"A: At his house.
"Q: How did you happen to be at his house that time?
"A: My mom was doing something and I had to stay the night there.
"Q: What happened that night?
"A: While I was in his room watching TV he came in and laid [sic] down and went down my pants.
"Q: Where were you to be sitting to be watching TV in his room?
"A: On his bed.
"Q: And you said he came in and laid [sic] down, where did he do that?
"A: Right beside me.
"Q: And then what happened?
"A: He went down inside my pants.
"Q: What did he use to go down inside your pants?
"A: His hand.
"Q: Did it go on the inside of your underwear or the outside?
"A: Inside.
"Q: How long did he stay with his hand inside your pants?
"A: About five to ten minutes.
"Q: Was he saying anything while he was doing that?
"A: Not that I can remember.
"Q: How was he positioned in relation to the way you were lying?
"A: I was lying flat on my back and he was laying [sic] on his side.
"Q: Can you describe what part of your body he was rubbing?
"A: The lower.
"Q: Can you give it a name?
"A: I don't know. It's a penis, I guess.
"Q: A penis?
"A: Yeah."

[7]This is the testimony of the mother:

"Q: Did you ever use Mr. Camarillo as a babysitter?
"A Yes.
"Q: Frequently or infrequently?
"A: Infrequently.
"Q: Do you recall was there ever an occasion where you used him as a baby-sitter over night?
"A: Yes.
"Q: What were the circumstances—Was there just one occasion or more than one?

The third incident occurred while the defendant was at the boy's home. The boy's testimony is that the defendant rubbed the outside of the zipper area on his jeans.[8]

The defendant's testimony contained a general denial that he had ever touched the boy in the fashion described through the boy's testimony. The defendant also had the

---

"A: That was one occasion.
"Q: And what were the circumstances there?
"A: I went to Tacoma, went to Tacoma and went out, and Larry babysat at his home."

[8]The following is testimony of the child about the third incident.
"Q: Did something else ever happen again that made you feel uncomfortable?
"A: Yes.
"Q: Can you describe where that occurred and how that occurred?
"A: At our house.
"Q: And how did you happen to be with Mr. Camarillo that time?
"A: He came over.
"Q: What happened that day?
"A: Well, I found this little frog and I gave it to him.
"Q: What was his response to you giving him that frog?
"A: The next day he brought me over a [old] TV.
"Q: To give to you?
"A: Yes.
"Q: What happened on that time?
"A: Well, he took me in the bedroom and he gave it to me and he started talking to me.
"Q: What about?
"A: About how much he liked the frog. And he sat me on his lap and started touching me again.
"Q: How long did that last?
"A: A couple of minutes.
"Q: Longer or shorter than the last time?"
At this point an objection was made following which there was a recess. Questioning resumed after the recess.
"A: Shorter.
"Q: Was that against your skin or clothing?
"A: Clothing.
"Q: How did you come to be sitting on the defendant's lap on that occasion?
"A: He just sat me up there.
"Q: Can you describe what type of touching went on?
"A: The same as the first one. He just rubbed on me.
"Q: Okay. Your same body part?
"A: Yeah."

elderly woman testify that she had never seen the defendant and the boy alone.

The defendant was charged under the former indecent liberties statute.[9] Indecent liberties occurs when:

(1) A person . . . knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . . .

(b) When the other person is less than fourteen years of age

. . ..

(2) For the purposes of this section, "sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

Former RCW 9A.44.100. The sexual contact has not been limited to direct contact with the breasts or genital organs. Indecent sexual contact may take place through clothing. *In re Adams,* 24 Wn. App. 517, 519, 601 P.2d 995 (1979) (citing *People v. Thomas,* 91 Misc. 2d 724, 398 N.Y.S.2d 821 (1977); *State v. Buller,* 31 Or. App. 889, 571 P.2d 1263 (1977)). Therefore, not only did the second incident constitute indecent liberties, but the first and third incidents did as well. The question before the jury was whether the defendant knowingly committed acts which resulted in sexual contact with a person younger than 14 years of age. Nothing more was required. *In re Shope,* 23 Wn. App. 567, 568, 596 P.2d 1361 (1979).

The evidence related to the defendant's commission of the same acts, repeatedly, with the boy victim. Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admissibility of the evidence must meet the standard in ER 403 which provides "[a]lthough relevant,

---

[9]Revised by Laws of 1988, ch. 146, § 2; Laws of 1988, ch. 145, § 10; Laws of 1986, ch. 131, § 1; Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.88.100. Formerly RCW 9A.88.100.

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . .".

*State v. Thorne,* 43 Wn.2d 47, 60, 260 P.2d 331 (1953) held that it is proper for "[s]uch evidence [to be] admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged." In numerous other cases this court has "invoked an exception in similar cases to permit evidence of collateral sexual misconduct when it shows a lustful disposition directed toward the offended [victim]." *State v. Ferguson,* 100 Wn.2d 131, 133–34, 667 P.2d 68 (1983); *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970), *overruled on other grounds in State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976); *State v. Leohner,* 69 Wn.2d 131, 417 P.2d 368 (1966); *State v. Fischer,* 57 Wn.2d 262, 356 P.2d 983 (1960); *State v. Thorne,* 43 Wn.2d 47, 260 P.2d 331 (1953).

The incidents testified to by the boy occurred between June 4, 1981, and July 10, 1982. The defendant was charged with one count of indecent liberties based on the three events testified to by the boy. Under the Rules of Evidence, the testimony was properly before the jury. The balancing of the relevancy and probity of the evidence against its harmful or prejudicial effects prior to its admission or exclusion is within the trial court's discretion. *State v. Ferguson, supra* at 135.

The uncontroverted evidence upon which the jury could reach its verdict reveals no factual difference between the incidents. As observed by the Court of Appeals:

> Here, besides Camarillo's bare denial of the allegations, there is no direct, contravening evidence concerning the occurrence of the alleged incidents. The jury, in order to render the verdict it did, must have chosen to believe S. Because proof of the substantially similar incidents relied upon a single witness' detailed, uncontroverted testimony, and because Camarillo offered no evidence upon which the jury could discriminate between the incidents, a rational juror believing one of the incidents actually occurred would necessarily believe that the others occurred as well.

*State v. Camarillo,* 54 Wn. App. 821, 828, 776 P.2d 176 (1989). The defendant has argued that the approach taken by the Court of Appeals conflicts with his right to remain silent and places upon him the burden to disprove his guilt. We disagree. We concur that the jury may consider the totality of the evidence of several incidents to ascertain whether there is proof beyond a reasonable doubt to substantiate guilt because of the acts constituting one incident and also to believe that if one happened, then all must have happened. The defendant testified on his own behalf and the elderly woman testified that she had never seen the defendant alone with the victim. The jury was free to believe the victim, disbelieve the defendant and give no weight whatsoever to the seemingly irrelevant testimony of the woman. Credibility determinations are for the trier of fact and cannot be reviewed on appeal. *State v. Casbeer,* 48 Wn. App. 539, 542, 740 P.2d 335, *review denied,* 109 Wn.2d 1008 (1987).

Our task is to determine whether a rational trier of fact could have a reasonable doubt as to whether any of the incidents did not establish the crime. In other words, whether the evidence of each incident established the crime beyond a reasonable doubt.

In the case at bar, the child testified with specificity about the details of the defendant's actions. He recalled what the defendant did to him and the circumstances which led up to the defendant molesting him. There was no conflicting testimony which would have placed any reasonable doubt in the mind of a juror that the events did not happen as described by the boy.

In *State v. Allen,* 57 Wn. App. 134, 788 P.2d 1084 (1990), a multiple acts case, Allen was convicted of indecent liberties based on the testimony of the child victim. The same issue was present in *Allen* as is present in this case, to wit: failure of the State to elect which act it was relying upon and failure to instruct on jury unanimity. In *Allen,* as here, when the defendant testified he stated only a general denial that any improper physical contact occurred. This case and

the *Allen* case are distinguishable from *State v. Kitchen,* 110 Wn.2d 403, 756 P.2d 105 (1988), because the defendants in *Kitchen* introduced evidence controverting the different incidents of the alleged improper contact and the victims had made contradictory statements. In both this case and the *Allen* case, however, nothing save the defendant's own testimony controverted or impeached the testimony of the victim. In *Allen* it was stated that:

> In view of Dixson's[10] general denial of any improper physical contact and C.P.'s testimony that substantially the same contact occurred during each visit, we find no rational basis for jurors to distinguish among the acts charged in count 1. The jurors had either to believe Dixson and acquit or believe C.P. and convict.

*Allen,* 57 Wn. App. at 139. The same is true in the case before us.

There was no uncertainty on the part of the boy regarding the type of sexual contact; there was no conflicting testimony about what had occurred on the three occasions testified to by the boy; the boy's testimony was unimpeached; and there was no attendant confusion as to dates and places on the part of the victim. The error was harmless beyond a reasonable doubt.

The conviction is affirmed.

DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

UTTER, J. (concurring)—I agree with the majority's holding that the special facts of this case justify holding that the failure to give a unanimity instruction was harmless in this case. I write separately because the majority's reasoning, if read too expansively, might undermine the standard that this court unanimously agreed governs the question of harmless error. *See State v. Kitchen,* 110 Wn.2d 403, 756 P.2d 105 (1988).

---

[10]Dixson was an alias used by defendant Allen.

In *State v. Kitchen, supra,* we held that constitutional error was presumed to be prejudicial. This presumption can only be overcome if no rational juror could have a reasonable doubt as to any one of the incidents alleged. *Kitchen,* at 411.

I agree with the majority that no reasonable juror could have found the defendant innocent. I am concerned, however, about reading the jury's collective mind to reach that result. *Kitchen* requires a presumption of prejudice whenever jury instructions are erroneous as to unanimity, precisely because the error usually makes it impossible to determine what the jury found factually. Without a unanimity instruction in a multiple acts case, the jury might convict even though it was not unanimous about any particular act having occurred. *Kitchen,* at 411. For that reason, the majority's citation to *State v. Casbeer,* 48 Wn. App. 539, 542, 740 P.2d 335, *review denied,* 109 Wn.2d 1008 (1987) is inappropriate. In *Casbeer,* the Court of Appeals upheld a finding of nonentrapment in a bench trial because a specific factual finding about the lack of credibility of a witness supported it. If the jury made specific factual findings about the credibility of witnesses, I would readily agree to uphold these findings if supported by substantial evidence. Because the jury reaches its verdict without entering specific findings of fact, however, assumptions about what the jurors must have thought are usually grossly unfair to defendants appealing constitutionally defective jury instructions. An improperly instructed jury may reach a verdict without reaching the factual conclusions which should support a verdict.

This record, however, forces me to agree with the majority that the jury could not have reached the verdict it did without concluding that the victim was telling the truth about all three incidents and that the defendant was lying about all of them. Because nothing in the record suggests that the credibility of the two principals varied as to any of the incidents and no other direct evidence of the acts was introduced, I agree that given the credibility judgment the

jury must have made, no reasonable juror could have concluded that the defendant was innocent of any of the acts alleged. Such a conclusion will never be appropriate if the record reveals any evidence which could justify a reasonable doubt in any juror's mind about any given incident, even if the jury obviously believed the victim and not the defendant.

I wish to emphasize that most records do not permit such confident inferences about what the jurors must have concluded. Such inferences will be inappropriate in almost any other case. We must always ask ourselves not just what we would have concluded were we the juror. We must decide whether any rational juror could have a reasonable doubt as to any of the acts alleged in deciding a harmless error question. *Kitchen,* at 411. Because no reasonable juror could have a reasonable doubt about any of the acts alleged in this case, I concur in the majority opinion.

BRACHTENBACH, J., concurs with UTTER, J.