FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                                    Respondent,<br><br>        v.<br><br>GINGER LEANNE CRANDALL,<br><br>                                    Appellant. | No.  42675-7-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J.P.T.[1] — A jury returned verdicts finding Ginger Crandall guilty of second degree burglary and second degree theft.  Crandall appeals her convictions, asserting (1) that the trial court violated her CrR 3.3 time-for-trial right by granting the State's continuance motion, and (2) that insufficient evidence supported her convictions.  The trial court properly exercised its discretion in granting a trial continuance to allow the State time to test new evidence and sufficient evidence support's Crandall's convictions.  Therefore, we affirm.

## FACTS

In March, 2010, Marcus Taft discovered that his garage door had been left open overnight and that items had been stolen from his vehicles.  The stolen items included new

---

[1] Judge Linda Lee is serving as judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

clothing Taft had purchased for his wife's birthday (valued at $700 to $800), a pair of sunglasses (valued at $329), and a key fob for one of his vehicles (valued at $300 to $400). Taft reported the incident to law enforcement authorities.

While inspecting the garage, Cowlitz County Deputy Sheriff Kelly Pattison and Taft noticed a cigarette butt four to five feet inside the garage behind the one of the rear tires on Taft's vehicle. Pattison noted that the cigarette butt appeared to have been dropped from within the garage because it appeared fresh, was not flattened, and was dry, while the ground outside was wet from rain. Taft stated that neither his family nor recent guests smoked cigarettes. Pattison collected and submitted the cigarette butt to the Washington State Patrol Crime Laboratory for deoxyribonucleic (DNA) testing. The DNA profile taken from the cigarette butt matched a DNA profile for Ginger Buck, which is Crandall's known alias.[2]

Deputy sheriffs executed a warrant to search a U-Haul storage unit that was leased to Ginger Crandall's husband. The U-Haul general manager stated that he had seen Crandall access her husband's storage unit on multiple occasions.

The deputies found Taft's stolen property and Crandall's checkbook inside the storage unit. Crandall admitted to police that she used the storage unit, but stated that she had been denied access the unit for a couple of weeks because her husband had put a second lock on it.

The State charged Crandall with second degree burglary and second degree theft. On December 14, 2010, Crandall appeared for arraignment and entered pleas of not guilty to both charges. The trial court scheduled trial for February 14, 2010. Crandall filed a speedy trial

---

[2] At a pretrial hearing, Crandall stated that her maiden name was Buck.

waiver on January 25, 2011, and again on April 14, 2011. In her second speedy trial waiver,

Crandall accepted May 1, 2011 as her new commencement date.[3]

On May 24, 2011, the State filed a motion to compel Crandall to submit to DNA

swabbing. The State asserted that although a previous DNA test showed that the DNA sample

taken from the cigarette butt matched a profile belonging to Crandall, Crandall's DNA sample in

the Washington State Combined DNA Index System (CODIS) "did not contain an adequate

amount of DNA necessary to present a true match." RP at 5-6. The State said that it could not

present the existing DNA test as evidence at trial because of a chain of custody issue with regard

to Crandall's CODIS DNA sample. On June 2, 2011, the trial court heard, but did not rule on,

the State's motion to compel. Instead, the trial court asked the State to provide a statistical basis

for its match on the current DNA test to establish the probable cause necessary to order a DNA

swab for a second test. The trial court then set a new hearing date on the State's motion for June

9, 2011.

The following discussion took place at the June 9 hearing after the trial court reviewed a

document provided by the State regarding DNA testing:

> [THE COURT]: It doesn't break down the test, but I think it does say
> that—that—that the match, based upon the profile, would match the—would be 1
> in 1.2 quintillion.
> [DEFENSE COUNSEL]: . . . [T]hat paragraph, I think, and I may be
> incorrect, I believe it stated that, you know, that chance of it matching any
> random person is 1.2 or one point whatever quintillion. What we don't have here
> is, they said, "We took Sample A and we compared it to Sample B", and they
> don't give any kind of, you know, ratio about how close of a match that is. We
> simply have no information on that test. The 1.1 quintillion simply, if they had
> taken a sample and matched it up against any other random sample, it would be a
> 1.1 quintillion chance of matching it, not if we matched two specific examples

---

[3] At the time Crandall executed her second time-to- trial waiver, she was not in custody.

what is the ration of the match. What, you know, what likelihood it is—is it? And that's what we need to get at here, and that's simply not present.

[THE COURT]: That really is a terribly written sentence. Do you agree with that, [State]?

[STATE]: Your Honor, I was not pleased with the outcome of that letter, I will admit.

[THE COURT]: Do you want to call them?

[STATE]: I—

[THE COURT]: Do you want to take another week and find out?

[STATE]: Well, the longer we take, the less likelihood we are going to have a test performed in time for trial. . . .

[THE COURT]: Well, this isn't even signed by the laboratory manager.

[STATE]: Exactly. The laboratory manager is not available.

[THE COURT]: So somebody signed it for the laboratory manager. All right. I am not going to order it. All right. I am not going to order it based upon somebody signing for somebody, and also a paragraph that could be written in plain English to mean something.

. . .

[STATE]: Would—would the Court allow the State one more week to attempt to get that? We do know that the—

[THE COURT]: You can always renew your motion if you get something closer than what I see here.

Report of Proceedings at 16-18.

On July 11, 2011, the State filed a motion to reconsider its motion to compel Crandall to submit a DNA swab for testing. The trial court heard the State's motion on July 14, 2011.

At the July 14 hearing, the State presented the testimony of Teresa Shank, a forensic DNA analyst with the Washington State Patrol Crime Laboratory. After hearing Shank's testimony, the trial court determined that probable cause existed to require Crandall to submit a DNA swab for testing. The State orally moved to continue the trial date beyond the 90-day time limit of CrR 3.3(b)(3) based on newly obtained DNA evidence, as well as availability of witnesses. Crandall objected to a continuance and requested that the State file a written motion. The trial court set July 19, 2011 for a hearing on the State's continuance motion.

4

On July 19, the trial court ruled that good cause existed to continue the trial based on the newly obtained DNA swab and the time necessary to conduct DNA testing on the swab. However, the trial court rejected the State's proposed October trial date and instead continued the trial to August 29, 2011.

At trial, Crandall's husband testified that he alone had burglarized Taft's garage. He also testified that he regularly took Crandall's used cigarettes and used the remaining tobacco in a hand-rolled cigarette. Crandall's husband stated that on the night of the burglary, he stood outside Taft's garage, hand-rolled a cigarette with tobacco from used cigarette butts, smoked the cigarette, and then entered Taft's vehicle. The jury returned verdicts finding Crandall guilty of second degree burglary and second degree theft. Crandall timely appeals her convictions.

ANALYSIS

I. CRIMINAL RULE 3.3

Crandall first asserts that the trial court violated her right to a timely trial under CrR 3.3 by granting the State's motion for a continuance. We disagree.

We review alleged violations of CrR 3.3's time-for-trial rule de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). However, the decision to grant or deny a motion for a continuance rests within the trial court's discretion, and we will not disturb that decision unless there is a clear showing that the trial court was manifestly unreasonable. *Kenyon*, 167 Wn.2d at 135.

CrR 3.3(b)(1) requires a defendant who is detained to be brought to trial within 60 days after being arranged. But a defendant who "is released from jail before the 60-day time limit has expired" must be brought to trial within 90 days. CrR 3.3(b)(3). A criminal defendant may

specify a new commencement date for purposes of CrR 3.3 by filing a written waiver of his or her rights under the time-for-trial rule. CrR 3.3(c)(2)(i). Delays in commencing trial due to a trial court's grant of a continuance under CrR 3.3(f) are excluded from the computation of the time for trial. CrR 3.3(e)(3). A trial court may grant a party's motion for a continuance if the "continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2).

In general, a trial court does not abuse its discretion in granting a continuance to permit the parties adequate time to prepare for the case or to permit the parties time to obtain new evidence. *State v. Flinn*, 154 Wn.2d 193, 200-201, 110 P.3d 748 (2005); *State v. Cauthron*, 120 Wn.2d 879, 910, 846 P.2d 502 (1993), *overruled in part on other grounds by State v. Buckner*, 133 Wn.2d 63, 65-67, 941 P.2d 667 (1997). A trial court must dismiss with prejudice charges not brought to trial within the time required by CrR 3.3. CrR 3.3(h).

Citing *State v. Wake*, 56 Wn. App. 472, 783 P.2d 1131 (1989), Crandall contends that the trial court abused its discretion by granting the State's motion for a continuance based on delays that were caused by inadequate funding for the Washington State Patrol Crime Laboratory. In *Wake*, Division Three of this court held that the trial court abused its discretion by granting the State's motion for a continuance based on the unavailability of an expert witness from the State crime lab. 56 Wn. App. at 473. In so holding, the *Wake* court reasoned:

> [T]he State has failed to keep pace with the growing number of drug cases, has an inadequate staff available for court testimony and, as a result, a logjam is being created. If congestion at the State crime lab excuses speedy trial rights, there is insufficient inducement for the State to remedy the problem.

119 Wn.2d at 475.

*Wake* does not assist Crandall. The trial court here found good cause to grant the State's continuance motion to allow the state crime lab time to conduct testing on Crandall's newly obtained DNA sample. There is nothing in the record suggesting that the continuance was necessary to accommodate delays at the crime lab due to inadequate funding. Instead, the trial court reasoned that continuing the start of trial until August 29, 2011, was necessary to allow the state crime lab time to conduct its DNA test on the newly obtained evidence. Crandall fails to show the trial court's decision to grant the trial continuance was manifestly unreasonable.

Crandall also contends that the trial court abused its discretion in granting the State's continuance motion based on the State's failure to adequately prepare for trial, citing *State v. Nguyen*, 131 Wn. App. 815, 129 P.3d 821 (2006). In *Nguyen*, Division One of this court held that the trial court abused its discretion in granting the State's continuance "solely on the suspicion that [the defendant] might be linked to some other crime." 131 Wn. App. at 821. That situation was not present here and, thus, *Nguyen* does not assist Crandall. In contrast with *Nguyen*, the State did not seek a continuance based on the mere possibility that it might discover new evidence linking Crandall to another crime. Rather, the State had obtained evidence linking Crandall to the charged crimes, but the State needed to conduct further DNA testing to satisfy the chain of custody so that it could present the evidence at trial.

In *Cauthron*, our Supreme Court held that the trial court did not abuse its discretion by granting the State's continuance motions where "the continuances were necessary to obtain the required evidence" and where the defendant was not prejudiced by the delay in starting trial. 120 Wn.2d at 910, *overruled in part on other grounds by Buckner*, 133 Wn.2d at 65-67. Similarly here, the State's request for a continuance was necessary to process newly obtained DNA

7

evidence, and Crandall does not demonstrate any prejudice stemming from the trial court's decision to grant the State's motion. Accordingly, we hold that the trial court did not violate Crandall's time-for-trial right under CrR 3.3.

SUFFICIENCY OF THE EVIDENCE

Crandall asserts that the State presented insufficient evidence at trial to support her convictions. Again, we disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Crandall of second degree burglary, the State had to prove beyond a reasonable doubt that she (1) entered or remained unlawfully in a building other than a vehicle or a dwelling (2) with intent to commit a crime against a person or property therein. RCW 9A.52.030(1); *see also State v. Brunson*, 128 Wn.2d 98, 104-105, 905 P.2d 346 (1995). To convict Crandall of second degree theft, the State had to prove beyond a reasonable doubt that (1) she wrongfully obtained or exerted unauthorized control over the property of another (2) exceeding $750 in value and not more than $5,000 in value. RCW 9A.56.020; RCW 9A.56.040.

No. 42675-7-II

Here, the State presented evidence that a cigarette butt containing only Crandall's DNA was found in Taft's garage shortly after Taft discovered that items valued over $750 had been taken from within his garage. The State also presented evidence that the cigarette butt had been dropped from inside of Taft's garage and that Taft did not give Crandall permission to be in his garage. Finally, the State's evidence showed that the stolen items were found in a storage unit to which Crandall had access and that her checkbook was also found in the storage unit. Viewed in a light most favorable to the State, this evidence was sufficient for the jury to find that Crandall (1) unlawfully entered Taft's garage (2) with intent to commit theft. Thus, the evidence supports the jury's verdict finding her guilty of second degree burglary.

Likewise, the State's evidence was sufficient for the jury to find that Crandall (1) wrongfully obtained property belonging to Taft and (2) the property was valued in excess of $750 and less than $5,000. Although Crandall's husband testified that he alone entered Taft's garage and took items from Taft's vehicles, his testimony has no bearing on our review of the sufficiency of evidence to convict, as the jury was free to disbelieve his testimony. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) ("Credibility determinations are for the trier

9

No. 42675-7-II

of fact and cannot be reviewed on appeal."). Accordingly, we affirm Crandall's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

LEE, J.P.T.

We concur:

WORSWICK, C.J.

JOHANSON, J.