FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM II: 17

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42635-8-II |
| Respondent, | |
| v. | |
| KENNETH RAY YOUNGBLOOD, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. – A jury found Kenneth Youngblood guilty of first degree manslaughter. Youngblood appeals his conviction, asserting that (1) the State presented insufficient evidence to prove the recklessness and causation elements of first degree manslaughter and (2) the trial court's reasonable doubt instruction misled the jury on the State's burden of proof. Because the State presented insufficient evidence to prove the recklessness element of first degree manslaughter, we reverse Youngblood's conviction and remand for dismissal with prejudice.

## FACTS

On December 18, 2009, Mark Davis went to an Aberdeen, Washington bar after attending a memorial service for a friend who had committed suicide. Youngblood was also at the bar that evening. While at the bar, Davis appeared to be intoxicated. Davis slurred his speech, cried over the death of his friend, and repeatedly stated that he wanted to kill himself.

Youngblood was speaking with Davis outside the bar when Youngblood's daughter, Katherine Youngblood, and Katherine's friend, Emily Brisby, arrived.[1] The four made plans to meet at Youngblood's home. When they arrived at Youngblood's home, the four began drinking and talking. Shortly thereafter, Davis became upset and suicidal. After Davis became distraught, Youngblood offered him between 10 and 20 pills to calm him down. According to Brisby, Youngblood handed Davis 10 to 20 pills but, when asked, refused to tell Davis what kind of pills they were, stating only that "they were to calm him down." Report of Proceedings (RP) at 109.

Shorty after ingesting the pills, Davis became "spac[e]y" and appeared to be "heavily sedated." RP at 110. After approximately 20 minutes, Davis tried to go to the bathroom but was too intoxicated to walk and had to be carried to the bathroom by Youngblood and Katherine. For the next few hours, Brisby frequently checked the bathroom to see if Davis was okay. She saw that Davis had fallen from the toilet with his head resting on the side of the bathtub and that he was still breathing. Brisby stated that she wanted to call 911, but Youngblood told her not to call 911 because he had taken that amount of the medication before and knew that Davis would be okay. Before leaving Youngblood's home at around 3:30 to 4:00 AM, Brisby checked on Davis and saw that he was still breathing. The following day, medics were called to Youngblood's home and found that Davis had died on the bathroom floor.

Youngblood told police officers that he had an illness that made it difficult "for him to remember things, particularly when he has been taking his medication or been drinking." RP at 33. Youngblood stated to the officers that he had hosted an after-hours party at his house with

---

[1] For clarity, we refer to Katherine Youngblood by her first name, intending no disrespect.

Davis, Katherine, and Brisby. Youngblood also told officers about his prescribed medications after the officers noticed several prescription bottles around his home. Officers collected several prescription bottles as evidence, including a half-filled bottle of Seroquel.[2] The State charged Youngblood with first degree manslaughter and controlled substances homicide.[3]

At trial, forensic toxicologist Brianne O'Reilly testified that she had tested a sample of Davis's blood, which test revealed Davis had a blood alcohol level of 0.230 to 0.235. O'Reilly's test of Davis's blood sample also revealed the presence of Seroquel and clonazepam, an anti-seizure medication. O'Reilly stated that the presence of Seroquel in Davis's blood sample exceeded the therapeutic dosage associated with the drug. But O'Reilly was unwilling to opine that the Seroquel in Davis's system caused his death. O'Reilly stated that she had trouble determining a fatal toxicity level for Seroquel because it is "in general considered a pretty safe medication." RP at 70.

Forensic pathologist Emmanuel Lacsina testified that he had performed Davis's autopsy, which revealed that Davis had high levels of alcohol and Seroquel in his system when he died. Lacsina stated his opinion that the combination of Seroquel and alcohol caused Davis's death. Lacsina also testified that this was the first case that he had examined where Seroquel was a factor in a person's death.

---

[2] According to the trial trial testimony, Seroquel is a brand name for the drug "quetiapine," an "anti-psychotic medication generally used in the treatment of schizophrenia or bipolar mania." RP at 69.

[3] Before trial, the trial court granted the State's motion to dismiss the controlled substances homicide charge. Thus, we do not address whether sufficient evidence would have supported that charge.

No. 42635-8-II

The jury returned a verdict finding Youngblood guilty of first degree manslaughter. Youngblood timely appeals his conviction.

ANALYSIS

Youngblood argues that the State presented insufficient evidence to support his first degree manslaughter conviction. Specifically, Youngblood contends that the State's evidence was insufficient to support the recklessness element of first degree manslaughter. We agree.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). To convict Youngblood for first degree manslaughter, the State had to prove beyond a reasonable doubt the essential elements of former RCW 9A.32.060 (1997), which provided in relevant part, "A person is guilty of manslaughter in the first degree when . . . [h]e recklessly causes the death of another person." Thus, to sustain Youngblood's first degree manslaughter conviction on appeal, the State's evidence must have been sufficient to prove that he acted recklessly.

4

RCW 9A.08.010(c) provides, "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(c)'s definition of recklessness contains both subjective and objective components, such that it requires the jury to determine "both what the defendant knew and how a reasonable person would have acted knowing these facts." *State v. R.H.S.*, 94 Wn. App. 844, 847, 974 P.2d 1253 (1999). When determining whether a defendant acted recklessly under this definition, the trier of fact "is permitted to find actual subjective knowledge if there is sufficient information that would lead a reasonable person to believe that a fact exists." *R.H.S.*, 94 Wn. App. at 847.

Youngblood contends that the State failed to present any evidence that he had actual knowledge of the substantial risk of death created by providing 10 to 20 Seroquel pills to a highly intoxicated Davis. In response, the State does not point to any evidence in the record supporting the jury finding that Youngblood had specific knowledge of a substantial risk of death that could occur by providing Seroquel to Davis, but instead asserts that it is a matter of "common knowledge" that mixing prescription medication with alcohol could have adverse side effects, including death. Br. of Respondent at 6. But, even accepting the State's argument that a reasonable person in Youngblood's position would believe that giving a large quantity of prescription medication to an intoxicated person could result in adverse side effects, including the *possibility* of death, here the State was required to prove that Youngblood knew of and disregarded a *substantial risk* that death would occur by providing an intoxicated Davis with Seroquel pills. RCW 9A.08.010(c). We hold that the State failed to meet this burden.

5

The State did not present any evidence that Youngblood had actual knowledge of the risks associated with combining Seroquel with alcohol, let alone a substantial risk of death. For example, the State did not present any testimony from a physician or pharmacist stating that they typically caution patients against mixing Seroquel and alcohol due to the risk of death, nor did the State present any documentary evidence, such as text from a warning label on the prescription bottle or physician's note. And the State did not present the half-filled prescription bottle of Seroquel that police had collected from Youngblood's apartment.

The State's evidence also failed to establish that a reasonable person would believe that giving Seroquel to an intoxicated person would likely result in the person's death. Although forensic toxicologist O'Reilly testified that the manufacturers of Seroquel warn against mixing the drug with alcohol, she did not testify that such manufacturers' warnings included information about a substantial risk of death associated with combining Seroquel and alcohol. And O'Reilly did not opine that Seroquel was the cause of Davis's death, testifying instead that Seroquel is "in general considered a pretty safe medication." RP at 70.

Forensic pathologist Lacsina's testimony similarly failed to establish knowledge of a substantial risk of death associated with providing Seroquel to an intoxicated person. Although Lacsina concluded that the combination of Seroquel and alcohol caused Davis's death, he admitted that this was the first case he had examined in which Seroquel was a factor in causing someone's death. In light of the State's own expert witnesses' testimony that Seroquel is generally considered a safe medication (O'Reilly) and that this was the only case examined by the witness where Seroquel was a factor in death (Lacsina), we cannot accept the State's claim

6

No. 42635-8-II

that the substantial risk of death associated with combining Seroquel and alcohol is a matter of "common knowledge."

Because the State's evidence was insufficient to prove that Youngblood knew, or that a reasonable person in Youngblood's position would know, of a substantial risk of death associated with providing Seroquel to a person under the effects of alcohol, it failed to establish the element of recklessness required to sustain a first degree manslaughter conviction. Accordingly, we reverse Youngblood's first degree manslaughter conviction and remand for dismissal with prejudice.[4]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Johanson, J.

---

[4] Because we reverse Youngblood's conviction based on the insufficiency of the State's evidence, we need not address his remaining issues.

7