# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2015 NOV -9 PH 4:6

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 72138-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SHELBY TYLER BENOIT, | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 9, 2015 |
| | ) | |

LAU, J. — Shelby Benoit appeals his driving under the influence (DUI) conviction. He contends the State failed to present sufficient evidence to support the conviction beyond a reasonable doubt. Viewing the evidence in the light most favorable to the State, we conclude that any rational jury could have concluded that Benoit was guilty of driving under the influence beyond a reasonable doubt. We affirm the judgment and sentence.

## FACTS

Around 2:30 a.m. on August 2, 2013, Burlington Police Officer David Goss witnessed Shelby Benoit driving 67 mph in a 35 mph zone. Officer Goss was in uniform

and driving a white marked Chevrolet Tahoe police cruiser. Officer Goss activated his overhead police lights and attempted a traffic stop. Once Officer Goss caught up to Benoit's vehicle, Benoit accelerated. During the pursuit, Benoit failed to stop for a red traffic light. Based on his own speed during the pursuit, Officer Goss estimated Benoit was travelling between 80 and 85 mph. Officer Goss activated his siren. He also activated a device triggering all traffic signals to turn green. Eventually, Officer Goss determined that the pursuit was not "worth the risk to the public" because Benoit was travelling at speeds above 80 mph and it appeared he was not going to stop. Report of Proceedings (RP) (June 9, 2014) at 14-15. Officer Goss terminated his emergency equipment. He slowed to the posted speed limit of 35 mph but continued to follow and observe Benoit. Officer Goss saw Benoit swerve into the center turn lane and fail to stop for another red traffic signal. Benoit also failed to stop at a stop sign.

Benoit parked in an apartment parking lot, taking up two stall spaces. Officer Goss parked and activated his emergency lights. Burlington Police Officer Jonathan Weiss arrived to assist Officer Goss. Officer Goss exited his vehicle and drew his weapon. Benoit exited his vehicle and began walking away. Officer Goss ordered Benoit to turn around and show him his hands. Officer Goss re-holstered his weapon after he saw Benoit's hands were empty.

Officer Goss told Benoit that he was being detained for investigation. Benoit said he was trying to find his father and tried to walk away again. Officer Goss grabbed Benoit's arm and told him he was not free to leave. Officer Goss smelled a strong odor of intoxicants coming from Benoit. He attempted to handcuff Benoit because he

-2-

appeared intoxicated and was uncooperative. After a brief struggle, Officers Goss and Weiss handcuffed Benoit.

Officer Goss advised Benoit of his Miranda rights, and Benoit voluntarily responded to questioning. When Officer Goss asked Benoit how much alcohol he had consumed prior to driving, Benoit said he and his father had been drinking a fifth of rum he purchased earlier that evening. Benoit suggested he had consumed a legal amount of alcohol:

> [STATE]: Did you ask him [Benoit] how much he had consumed?
>
> [GOSS]: I did. He smiled and said, quote, "the legal limit," end quote. I asked what that meant. He said quote, "you know," end quote.

RP (June 9, 2014) at 25. Benoit "apologized for causing problems" and explained he could not get arrested because he was studying to be a lawyer. RP (June 9, 2014) at 26. Officer Goss noticed several signs of intoxication during questioning:

> [GOSS]: While I was speaking with [Benoit] and having him answer these questions I was able to confirm he had a strong odor of intoxicants, what we would refer to as alcohol coming from his breath. His eyes were droopy, bloodshot, pupils appeared to be dilated. His face was red or flushed. He was repeating himself, mispronouncing some words. These were all in my experience signs of intoxication.

RP (June 9, 2014) at 26. Officer Goss drove Benoit to the Burlington Police Department to complete the DUI investigation.

On arrival, Benoit continued to exhibit behavior indicating intoxication. For instance, Officer Goss testified that Benoit experienced mood swings: "He would be upset, very demanding, and a moment later be sad, be laughing, making jokes. So,

again, those are in my experience mood swings similar to what have been signs of intoxication." RP (June 9, 2014) at 27. Benoit also said something similar to "I'm pretty drunk" or "I've had too much to drink." RP (June 9, 2014) at 28. Benoit told the officers he needed to vomit, so they placed him in a cell with a toilet. While detained, Benoit fell off of a chair and hit his head. Officer Goss called emergency services to treat Benoit. While the medics examined Benoit, "he was joking, telling them that he knew them, and kind of [making] nonsense statements." RP (June 9, 2014) at 29. The medics determined nothing was medically wrong with Benoit.

Officer Goss readvised Benoit of his Miranda rights. Benoit asked if he could urinate. Officer Goss walked him back to the cell, but Benoit "stopped at the doorway, didn't walk in, he began to undo his pants, as if he was going to try to urinate into the toilet from the doorway." RP (June 9, 2014) at 30. Officer Goss told Benoit to stop and ordered him into the cell. Benoit refused. Benoit resisted Officer Goss' efforts to place him in the cell. Officer Goss and another officer struggled to control Benoit and eventually handcuffed him and got him into the cell. After two and a half hours with Benoit, Officer Goss concluded that Benoit appeared extremely intoxicated.

Two other officers gave similar testimony. Officer Weiss, who assisted Officer Goss when he detained Benoit in the parking lot of the apartment complex, stated that he could smell a strong odor of intoxicants on Benoit. He also stated that Benoit stumbled as he walked. Like Officer Goss, Officer Weiss believed that Benoit appeared intoxicated. Officer Kyle Campo was also present when Officer Goss detained Benoit. Officer Campo heard Benoit say "I'm a little drunk." RP (June 9, 2014) at 106-07. Officer Campo said that Benoit exhibited mood swings from crying to laughing. When

Officer Goss attempted to readvise Benoit of his Miranda rights and implied consent warnings at the police department, Officer Campo noticed that Benoit placed his fingers in his ears and appeared not to be listening. Officer Campo believed that Benoit was intoxicated.

On August 6, the State charged Benoit with attempting to elude a pursuing police vehicle, driving under the influence, and resisting arrest. A jury convicted Benoit on all three counts. The trial court sentenced Benoit to 20 days jail on the attempting to elude conviction, 364 days on the DUI conviction with all but 20 days suspended, and 90 days on the resisting arrest conviction with all 90 days suspended. Benoit's sentence was stayed pending this appeal. Benoit appeals only the DUI conviction.

## ANALYSIS

The sole issue in this appeal is whether the State presented sufficient evidence to prove that Benoit was guilty of driving under the influence beyond a reasonable doubt. We conclude the State presented sufficient evidence.

In a criminal prosecution, the State must prove each element of the charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d. 368 (1970). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. A claim of insufficiency admits the truth of the State's evidence and all

inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (internal citations omitted).

The statute prohibiting driving under the influence provides:

> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:
>
>> (a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
>>
>> (b) The person has, within two hours after driving, a THC concentration of 5.00 or higher as shown by analysis of the person's blood made under RCW 46.61.506; or
>>
>> (c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug; or
>>
>> (d) While the person is under the combined influence of or affected by intoxicating liquor, marijuana, or any drug.

RCW 46.61.502.[1] The trial court provided the jury with the following to-convict instruction:

> To convict the defendant of driving while under the influence, each of the following three elements of the crime must be proved beyond a reasonable doubt:
>
>> (1) That on or about August 2, 2013, the defendant drove a motor vehicle;
>>
>> (2) That the defendant at the time of driving a motor vehicle was under the influence of or affected by intoxicating liquor
>>
>> And
>>
>> (3) That this act occurred in the State of Washington.

---

[1] The State did not test Benoit's blood or breath for alcohol concentration.

> If you find from the evidence that elements (1), (2), and (3) have been proven beyond a reasonable doubt, then it will be your duty to return a verdict guilty.
>
> On the other hand, if after [weighing] all of the evidence, you have a reasonable doubt as to any one of elements (1), (2), or (3), then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 42. A separate instruction provided that "a person is under the influence of or affected by the use of intoxicating liquor if the person's ability to drive a motor vehicle is lessened in any appreciable degree." CP at 41. Evidence is sufficient to prove that a defendant drove under the influence when the jury can "infer that the [defendant's] ability to handle an automobile was lessened in an appreciable degree by the consumption of intoxicants or drugs." State v. Wilhelm, 78 Wn. App. 188, 193, 896 P.2d 105 (1995). The State may rely on circumstantial evidence and need not provide evidence of a breathalyzer or blood-alcohol content (BAC) test. See Wilhelm, 78 Wn. App. at 192-93.

Viewing the evidence in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that Benoit was guilty of driving under the influence. First, the State presented sufficient circumstantial evidence demonstrating that Benoit was intoxicated. Benoit admitted that he had consumed alcohol when Officer Goss initially detained him in the parking lot of the apartment complex. When Benoit was at the Burlington Police Department, he said something to the effect of "I'm pretty drunk" or "I've had too much to drink." RP (June 9, 2014) at 28. Benoit's behavior also demonstrated intoxication. Both Officer Goss and Officer Weiss testified that Benoit smelled of alcohol. They also stated Benoit exhibited mood swings and made "nonsense statements." RP (June 9, 2014) at 29. Officer Goss testified that

he could not complete DUI processing because of Benoit's unruly demeanor. Four police officers testified that, in their opinion, Benoit was intoxicated.

Second, the State presented sufficient evidence such that a rational jury could conclude that Benoit's intoxication lessened his ability to drive by an appreciable degree. Benoit argues that, despite his intoxicated state, his driving remained competent, stating that "other than surpassing the speed limit, Mr. Benoit complied with all traffic laws." Br. of Appellant at 9. This misstates the record. Indeed, Officer Goss first noticed Benoit's driving because he was speeding. Officer Goss's radar detector indicated that Benoit was travelling at 67 mph in a 35 mph zone. When Officer Goss pursued, Benoit accelerated to between 80 and 85 mph. But Officer Goss noted several other traffic violations during his pursuit in addition to Benoit's speeding. He witnessed Benoit fail to stop for two red traffic signals and one stop sign. He also witnessed Benoit veer into the center turn lane before correcting his trajectory. Under these circumstances, a rational jury could have concluded that Benoit's ability to drive was lessened by an appreciable degree due to alcohol consumption. The State presented sufficient evidence to prove that Benoit was guilty of driving under the influence beyond a reasonable doubt.

Benoit argues that the State's evidence is "equally consistent with an explanation inconsistent with intoxication—such as mental illness—as with one supporting the State's theory." Br. of Appellant at 12. However, under the sufficiency of the evidence standard, whether the evidence is "equally consistent" with an innocent explanation is irrelevant. In other words, it is not enough to argue that the jury could just as easily have arrived at a different conclusion considering the same evidence. Rather, Benoit

must show that no rational factfinder could have found guilt beyond a reasonable doubt. See Salinas, 119 Wn.2d at 201 ("The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." (emphasis added)). Therefore, even if Benoit's behavior could reasonably be explained by mental illness, the fact that this conclusion is "equally consistent" with intoxication—as Benoit argues—indicates that the State presented sufficient evidence for a rational factfinder to conclude that Benoit was guilty of driving under the influence beyond a reasonable doubt.

Benoit also relies on both Wilhelm and State v. Shabel, 95 Wn. App. 469, 976 P.2d 153 (1999). In both cases, the court affirmed DUI convictions when the State relied primarily on circumstantial evidence. See Shabel, 95 Wn. App. at 474; Wilhelm, 78 Wn. App. at 192-93. Benoit contends that the circumstantial evidence here is weaker than the evidence presented in Wilhelm and Shabel, and that therefore the State failed to present sufficient evidence to support his conviction. This argument is unpersuasive. Essentially, Benoit argues that circumstantial evidence cannot support a DUI conviction unless that evidence meets or exceeds the strength of the evidence presented in Wilhelm and Shabel. But whether the circumstances here differ from those cases is irrelevant. We must ask only whether the evidence presented, when viewed in the light most favorable to the State, would allow any rational factfinder to conclude that Benoit drove under the influence. As discussed above, the State elicited testimony from four police officers who observed Benoit's behavior and driving on the night in question. Those officers testified that Benoit exhibited signs of intoxication and that he was driving

erratically. Benoit did not testify. The credibility of the witnesses is a question for the jury. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Under these circumstances, the State presented sufficient evidence to prove that Benoit is guilty of driving under the influence beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence.

WE CONCUR: