FILED
COURT OF APPEALS
DIVISION II

2014 APR 15 AM 8: 55

STATE OF WASHINGTON

BY _____
DEPUTY



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF OLYMPIA,<br><br>                        Respondent,<br><br>    v.<br><br>AARON HULET,<br><br>                        Petitioner. | No. 43059-2-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Aaron Hulet was convicted and sentenced for driving under the influence (DUI) after the municipal court revoked his deferred prosecution for violating the terms of the order. Upon filing a notice of appeal, Hulet discovered that the municipal court had destroyed the recordings of the arraignment and deferred prosecution hearings. Hulet then filed a RALJ 5.4 motion for a new trial, arguing that the missing records were significant or material to his appeal. The municipal court denied Hulet's RALJ 5.4 motion, and the superior court affirmed the municipal court's order. The superior court also affirmed the revocation of Hulet's deferred prosecution, conviction for DUI, and sentence. This court granted discretionary review of the superior court's denial of Hulet's RALJ 5.4 motion and Hulet's sentence. We affirm.

## FACTS

On June 12, 2006, Hulet was charged with DUI by citation in Olympia Municipal Court. The docket shows that Hulet was arraigned and entered a plea of not guilty. Hulet then petitioned for deferred prosecution under chapter 10.05 RCW, which the municipal court granted. The order deferred the prosecution for five years and provided that the deferral may be revoked if Hulet committed any alcohol-related violations within that period.

On August 4, 2010, Hulet was charged with DUI in Thurston County District Court. Hulet pleaded guilty, and the district court entered a judgment and sentence.[1]

As a result of the new DUI conviction, the City of Olympia filed a motion in municipal court to revoke the deferred prosecution of the 2006 DUI charge. The municipal court reviewed the docket for the Thurston County matter and was satisfied that Hulet had been convicted of DUI in 2010. Based on that 2010 Thurston County conviction, the municipal court found that Hulet had violated his deferred prosecution conditions for the 2006 DUI charge and revoked the deferred prosecution order. The municipal court then reviewed the police report for the 2006 DUI charge and concluded that the driving pattern, allegations, and breath test results constituted a sufficient factual basis for the 2006 DUI charge. Accordingly, the municipal court entered a finding of guilty on the 2006 DUI charge.

---

[1] The Thurston County District Court made a finding that Hulet qualified for the medical exemption (discussed below) and reduced the amount of mandatory minimum jail time. Thurston County appealed the district court's finding and that appeal was pending at the time of Hulet's revocation hearing. However, because the fact of an appeal does not invalidate Hulet's conviction, the municipal court revoked Hulet's deferred prosecution.

The municipal court imposed the mandatory minimum sentence for a second offense with a breath test above 0.15, which required 45 days in custody and 90 days on Electronic Home Monitoring (EHM).[2] *See* RCW 46.61.5055(2)(b)(i). Hulet requested the municipal court convert the 45 days' imprisonment to additional EHM under an exception allowing suspension of the mandatory minimum if the court makes findings that incarceration would pose a substantial risk to the offender's physical or mental well-being. *See* RCW 46.61.5055(2)(b)(i).

Hulet submitted an affidavit from his physician to support his claim that serving jail time would pose a substantial risk to his physical or mental well-being. Hulet's physician discussed, in detail, the stressors that caused Hulet's relapse on alcohol and resulted in the most recent DUI. According to Hulet's physician, Hulet suffers from chronic degeneration of lumbar disc. Although Hulet's physician made several arguments why he believed "leniency" was appropriate, only one was related to Hulet's medical condition:

> A harsh sentence/jail time could jeopardize all he has worked for by causing humiliation and impairment of his reputation in his work place; would likely result in aggravation of his lumbar disability from sleeping on a poor quality bed/cot; could give his dysfunctional impaired wife legal grounds for seeking custody of her daughter (which I attest would be a tragedy for him and his daughter) and may cause further emotional despair resulting in decompensation of his anxiety/depression condition.

Clerk's Papers (CP) at 35-36.

The municipal court found Hulet's physician to be credible. However, while the municipal court had "a lot of respect" for Hulet's physician, it could not find that the medical

---

[2] The municipal court structured the sentence as 365 days' imprisonment with 230 days suspended with 45 of those days in served in custody and 90 days on EHM, with credit for one day served in custody.

exemption applied to Hulet based on the documentation provided to the court. CP at 480. The municipal court also denied Hulet's request for work release. Hulet moved for reconsideration of the municipal court's sentence regarding work release, which was also denied.

Hulet then filed a notice of appeal to the superior court of all decisions in the municipal court case. When Hulet attempted to designate the municipal court record for appeal purposes, he discovered that the municipal court did not have the audio recordings of the 2006 arraignment and deferred prosecution hearings. Hulet filed a RALJ 5.4[3] motion for a new trial based on the loss of a significant or material portion of the record. The municipal court denied Hulet's RALJ 5.4 motion. Hulet appealed to the superior court.

On appeal to the superior court, Hulet argued (1) the arraignment proceeding was procedurally and factually deficient, (2) the order granting the deferred prosecution was invalid, (3) the revocation was based on insufficient evidence, (4) Hulet's sentence was improper, (5) he received ineffective assistance of counsel, and (6) the municipal court erred by denying his RALJ 5.4 motion. Specifically, Hulet argued that the deferred prosecution was defective because the trial court failed to make a finding that Hulet was advised of his rights, and

---

[3] RALJ 5.4 provides:

> In the event of loss or damage of the electronic record, or any significant or material portion thereof, the appellant, upon motion to the superior court, shall be entitled to a new trial, but only if the loss or damage of the record is not attributable to the appellant's malfeasance. In lieu of a new trial, the parties may stipulate to a nonelectronic record as provided in rule 6.1(b). The court of limited jurisdiction shall have the authority to determine whether or not significant or material portions of the electronic record have been lost or damaged, subject to review by the superior court upon motion.

Hulet did not enter the petition knowingly and voluntarily because he was misinformed about the sentencing consequences of violating the deferred prosecution. Hulet also challenged his sentence, arguing that the City failed to prove his prior conviction for DUI in 2003, the municipal court erred by finding the medical exemption did not apply, and the municipal court imposed an improper sentence based on Hulet's "third DUI" in Thurston County. CP at 515.

The superior court affirmed the trial court. Hulet sought discretionary review in this court, and a commissioner of this court denied review. On a motion to modify the commissioner's ruling, we granted Hulet's motion to modify in part, limiting our review to two specific issues: "(1) the denial of [Hulet's] RALJ 5.4 motion for a new trial, and (2) his sentencing." Order Granting Motion to Modify in Part, (July 3, 2012), Spindle.

## ANALYSIS

### A. HULET'S RALJ 5.4 MOTION

Under RALJ 5.4, an appellant is entitled to a new trial if a significant or material portion of the record is lost or damaged. This requires the municipal court to actually make three separate determinations: (1) the content of the record that was lost or damaged, (2) whether the record was lost or damaged, and (3) whether the lost or damaged record was significant or material. *State v. Osman*, 168 Wn.2d 632, 638-39, 229 P.3d 729 (2010).

On appeal of the trial court's order on a RALJ 5.4 motion, an appellate court reviews the municipal court's factual determinations (i.e., the content of the record and whether the record was lost or damaged) for sufficiency of the evidence. *Osman*, 168 Wn.2d 639. However, we review the determination of whether the records are significant or material de novo. *Osman*, 168

Wn.2d at 639. For the lost or damaged record to be significant or material, the missing record must be "important to or warrants consideration in an appeal."[4] *Osman*, 168 Wn.2d at 645.

1. Arraignment

Hulet argues that the missing audio recording of his arraignment is significant or material to the appeal of the validity of his arraignment. He argues that without the record, there is no evidence that the municipal court properly arraigned him or provided him with any citation that informed him of any of the charges as required under CrRLJ 4.1. We disagree.

Any irregularity at Hulet's arraignment hearing can be waived by his attorney's entering a notice of appearance and plea of not guilty after the arraignment hearing. *See former* CrRLJ 4.1(e)(1), (3) (2006) (appearance by defendant's lawyer "constitutes a waiver of any defect in the complaint or the citation and notice except for failure to charge a crime . . . and except for any

---

[4] We note that, from the record before this court, both the municipal court and the superior court misunderstood the appropriate way to address a RALJ 5.4 motion. Rather than making the required findings of fact and conclusions of law required by RALJ 5.4 and *Osman*, the municipal court appeared to believe that the lost or damaged records were not significant or material because the appropriate procedure for requesting a new trial is through CrRLJ 7.5 (motion for a new trial) or CrRLJ 7.8 (relief from final judgment). The municipal court is incorrect. RALJ 5.4 is a unique rule that grants an appellant a new trial based solely on the loss or damage of significant or material records, without challenging the underlying judgment. Further, the superior court apparently reached its determination that the lost or damaged records were immaterial because Hulet's claims failed on the merits. In *Osman*, our Supreme Court was clear that whether a lost or damaged record is significant or material does not warrant consideration of the merits of the appellate issue. 168 Wn.2d at 645 ("The issue is whether the missing record is important to or warrants consideration in an appeal; a party need not show at this stage that the appeal will prevail, nor is that issue yet ripe for the court to decide.").
However, the municipal court's and superior court's misunderstanding of the application is immaterial for us to decide this matter. It is undisputed that the records are lost or damaged, and that lost or damaged records contain the hearings for Hulet's arraignment and the entry of Hulet's deferred prosecution. Because our review of whether the lost or damaged records are significant or material is de novo, we can determine whether the records are significant or material to Hulet's appeal.

other defect that is specifically stated in writing or on the record at the time the appearance is entered"). The notice of appearance is in the record before this court and clearly was entered after Hulet's arraignment. Further, Hulet has not made any allegations that records related to his attorney's notice of appearance are lost or damaged. Therefore, the missing arraignment hearing record is not substantial or material to Hulet's appeal.

2. Order Granting Deferred Prosecution

Hulet has raised two specific challenges to his deferred prosecution. First, he argues that the order entering the deferred prosecution was defective because the municipal court failed to make a finding that Hulet was advised of his rights as required by the statute authorizing deferred prosecutions. RCW 10.05.020(4). Second, Hulet argues that he did not enter the petition knowingly and voluntarily because he was improperly informed of the sentencing consequences if the deferred prosecution was revoked. The question before this court is not whether the issues raised by Hulet have merit or require reversal. *Osman*, 168 Wn.2d at 645. Rather, the issue is whether the lost or damaged records are significant or material to resolving Hulet's appeal if it were to be considered on the merits. We conclude that they are not.

First, Hulet argues that the order entering the deferred prosecution is invalid because the municipal court never made a finding that Hulet was advised of his rights. Deferred prosecutions are specifically created and authorized by statute. Ch. 10.05 RCW; *Abad v. Cozza*, 128 Wn.2d 575, 580, 911 P.2d 376 (1996). RCW 10.05.020(4) sets out the requirements for a deferred prosecution order:

> Before entering an order deferring prosecution, the court shall make specific findings that: (a) The petitioner has stipulated to the admissibility and sufficiency of the facts as contained in the written police report; (b) the petitioner

7

has acknowledged the admissibility of the stipulated facts in any criminal hearing on the underlying offense or offenses held subsequent to revocation of the order granting deferred prosecution; (c) the petitioner has acknowledged and waived the right to testify, the right to a speedy trial, the right to call witnesses to testify, the right to present evidence in his or her defense, and the right to a jury trial; and (d) the petitioner's statements were made knowingly and voluntarily. *Such findings shall be included in the order granting deferred prosecution.*

RCW 10.05.020(4) explicitly requires that the trial court make a finding that the petitioner for a deferred prosecution was advised of his rights and to include this finding in the order of deferred prosecution.

We can determine whether the trial court has fulfilled this statutory requirement based exclusively on the face of the order granting deferred prosecution. Here, the order granting deferred prosecution is in the record. On its face, the order granting deferred prosecution fails to include a finding that "the petitioner has acknowledged and waived the right to testify, the right to a speedy trial, the right to call witnesses to testify, the right to present evidence in his or her defense, and the right to a jury trial." Therefore, the lost or damaged portions of the record are not significant or material to resolving Hulet's appeal if it were to be considered on the merits.[5]

Second, Hulet argues that he did not enter the petition knowingly or voluntarily because he was misinformed about the sentencing consequences of entering a deferred prosecution. RCW 10.05.020(4) requires that the trial court make a finding that the petitioner's statements were knowing and voluntary, including the waiver of constitutional rights. A waiver of constitutional rights is not made knowingly if the defendant is unaware or misinformed of the

---

[5] We do not decide whether the lost or damaged records would be significant or material to Hulet's appeal had the order entering deferred prosecution contained the statutorily required findings and Hulet challenged the sufficiency of the evidence supporting those findings. Those facts are not before us.

direct consequences of the waiver. *See In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004) (holding guilty plea is not entered knowingly if it is based on misinformation of sentencing consequences). Hulet points to a specific section of his petition for deferred prosecution which states:

> I understand that if I proceed to trial and I am found guilty, I may be allowed to seek suspension of some or all of the fines and incarceration if I seek treatment. I understand that I may seek treatment from a public or private agency at any time, whether or not I have been found guilty or placed on deferred prosecution.

CP at 108. According to Hulet, this is a misstatement of the law because the municipal court may not suspend mandatory minimum jail time based on the defendant seeking treatment.

The lost or damaged record is not significant or material to this issue. Whether a statement is an accurate statement of the law is a question that we review de novo. *See State v. Becklin*, 163 Wn.2d 519, 525, 182 P.3d 944 (2008) (reviewing whether jury instructions are accurate statements of the law de novo). The language which Hulet alleges was a misstatement of the law is in his own petition for deferred prosecution and is in the record on appeal. Thus, the record would allow us to determine whether the statement in Hulet's petition is misleading or an inaccurate statement of the law regarding sentencing consequences. Accordingly, the lost or damaged records are not significant or material to Hulet's appeal.

In addition to the specific assertions addressed above, Hulet also appears to claim that the trial court should have granted his RALJ 5.4 motion based on a bald assertion that the minimum due process principles identified in *Abad* were violated. Hulet is correct in his assertion that *Abad* requires the defendant's waiver of rights in a deferred prosecution to be "affirmative, voluntary, knowing, intelligent and on the record." 128 Wn.2d at 583. To the extent that Hulet

argues that his due process requirements are vested in RALJ 5.4, he is incorrect. *Abad* requires that the waiver occur on the record; it does not create a due process right guaranteeing a new trial in any case where that record is lost or damaged. Absent a legitimate argument that the due process requirements were not met in a particular case, *Abad* does not mandate granting a RALJ 5.4 motion.

Hulet has failed to make any specific allegation or showing that *his due process* requirements were violated here. Under RALJ 5.4, an allegation that the content of the lost or damaged record is unknown is insufficient to demonstrate that the missing record is significant or material. To hold otherwise would render the significant or material language in RALJ 5.4 superfluous, reducing RALJ 5.4 to a per se rule providing defendants with a new trial anytime a record is lost or damaged.

Moreover, *Osman's* requirement that the trial court make findings of fact regarding the content of the lost or damaged record would likewise be rendered meaningless. Here, outside of the specific allegations raised by Hulet and addressed above, Hulet has never alleged that the entry of the deferred prosecution order occurred off the record nor has he identified how the hearing failed to comply with due process requirements. Without such an allegation and subsequent finding there is no issue for us to review.[6] Because Hulet made no other specific allegations and did not request a finding regarding the municipal court's failure to comply with

---

[6] We also note that, had Hulet made such an allegation, it would be appropriate to remand for the municipal court to make the relevant findings of fact regarding the content of the record. However, because Hulet failed to make such an allegation, remand is unnecessary, and for the reasons explained in footnote 4, the municipal court's failure to make appropriate findings of fact does not require reversal or remand.

the due process requirements, any decision we would make regarding the significance and materiality of the missing record would be based on speculation. We will not base a decision on hypothetical or speculative facts. *See Walker v. Munro*, 124 Wn.2d 402, 414, 879 P.2d 920 (1994) (opinions based on hypothetical or speculative facts are purely advisory and we do not issue advisory opinions). Accordingly, any argument purportedly based on the due process requirements of *Abad* is not properly before us.

## B.     SENTENCING

Hulet argues that his sentence must be reversed because the City failed to prove the existence of a 2003 DUI, the municipal court relied on the 2010 DUI conviction even though it was not a prior offense, the municipal court abused its discretion in denying his medical exception that would have relieved him from the mandatory minimum amount of imprisonment, and the municipal court abused its discretion by considering the availability of "good time."[7] Br. of Appellant at 38, 41. We disagree.

### 1. 2003 DUI Conviction

Hulet argues that the municipal court erred by sentencing him based on a prior 2003 DUI conviction that the City failed to prove. We disagree.

Absent an affirmative acknowledgement by the defendant of facts and information introduced for the purposes of sentencing, the City must establish the criminal history by a

---

[7] Apparently, Hulet's sentence is stayed pending this appeal. The record does not contain an order staying the execution of his sentence, but the superior court indicated in its oral ruling that it would be willing to grant a stay pending appellate review, and it appears that the superior court signed the order at the end of the proceeding. Neither Hulet nor the City discusses the stay of sentence, so we proceed under the assumption that Hulet has not already served his sentence and that this court may still grant Hulet effective relief for any alleged sentencing errors.

preponderance of the evidence. *State v. Mendoza*, 165 Wn.2d 913, 928-29, 205 P.3d 113 (2009). A prosecutor's summary, without more, is insufficient to satisfy due process. *State v. Hunley*, 175 Wn.2d 901, 915, 287 P.3d 584 (2012). Furthermore, a defendant's mere failure to object to such a statement is not sufficient to support a finding that the defendant has prior conviction. *Hunley*, 175 Wn.2d at 913-14; *Mendoza*, 165 Wn.2d at 928-29.

Here, Hulet provided the municipal court with a letter in support of his sentencing memorandum. Hulet began his statement by writing: "My first two DUI's I was a young adult with no responsibility and no fear of loss (I had nothing to lose)." CP at 46. In this statement, Hulet affirmatively acknowledged that he had a prior DUI conviction . Therefore, the City was not required to provide certified documentation proving the existence of the Hulet's prior conviction.

2. 2010 DUI Conviction

Hulet argues that the municipal court erred by sentencing him based on his recent 2010 DUI conviction because that offense was not a "prior offense" for purposes of sentencing him on the earlier deferred 2006 DUI. Br. of Appellant at 33-34. Hulet is correct that "[o]ffenses that occur after the current offense must not be considered 'prior offenses' for purposes of sentencing for DUI." *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009). The municipal court, however, did not sentence Hulet based on his 2010 conviction.

Although the municipal court referred to the fact that Hulet had three DUI convictions, the court considered only the 2003 DUI conviction as a prior offense in sentencing Hulet on the 2006 DUI charge. The court sentenced Hulet to 45 days in jail and 90 days EHM consistent with RCW 46.61.5055(2)(b)(i), which provides that a person convicted of a second DUI within seven

years whose alcohol concentration was at least 0.15 shall be punished by imprisonment for not less than 45 days nor more than 364 days and 90 days of EHM. On the other hand, a person convicted of a third or fourth DUI within seven years whose alcohol concentration was at least 0.15 shall be punished by imprisonment for not less than 120 days nor more than 364 days and 150 days of EHM. RCW 46.61.5055(3)(b)(i). It is clear that the municipal court sentenced Hulet based on only one prior offense, the 2003 DUI conviction.[8]

3. Medical Exemption

Hulet argues that the municipal court abused its discretion by using the wrong standards in rejecting his request not to serve jail time due to physical and mental health issues. First, Hulet argues that the municipal court applied the wrong legal standard to determine whether Hulet's sentence could be suspended under the medical exemption in RCW 46.61.5055.[9]

---

[8] Hulet also argues that this court should reverse his sentence because the municipal court violated RCW 46.61.513, which requires that immediately before the court defers prosecution under RCW 10.05.020, dismisses a charge, or orders a sentence for DUI, the court shall verify the defendant's criminal history and driving record. Even if the court violated the statute, Hulet cites no authority for the proposition that such a violation should result in his sentence being vacated. Assuming the court violated RCW 46.61.513, there is no prejudice warranting a vacation of his sentence because Hulet had an opportunity to fully litigate his criminal history at his sentencing hearing.

[9] RCW 46.61.5055(2)(b) provides that the sentence for a person with one prior offense, and a blood alcohol concentration of at least 0.15, the person should be sentenced to:

> (i) By imprisonment for not less than forty-five days nor more than three hundred sixty-four days and ninety days of electronic home monitoring. In lieu of the mandatory minimum term of ninety days electronic home monitoring, the court may order at least an additional four days in jail. . . . Forty-five days of imprisonment and ninety days of electronic home monitoring may not be suspended or deferred unless the court finds that the imposition of this mandatory minimum sentence would impose a substantial risk to the offender's physical or mental well-being. Whenever the mandatory minimum sentence is suspended or

Second, Hulet argues that the municipal court abused its discretion by considering the medical exemption in RCW 46.61.5055 as an all or nothing proposition. Third, Hulet argues that the trial court disregarded the merits and refused to suspend his sentence because he was a three time offender.

Based on the evidence presented at sentencing, the record does not support applying the medical exemption in RCW 46.61.5055 to Hulet's case. Therefore, the trial court did not err by refusing to suspend the mandatory minimum jail time.

Whether the medical exemption in RCW 46.61.5055 applies is a mixed question of fact and law. We review the municipal court's findings of fact to determine if they are supported by substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We will not disturb the municipal court's credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review the application of a statute to a specific set of facts de novo. *State v. Dupuis*, 168 Wn. App. 672, 674, 278 P.3d 683, *review denied*, 175 Wn.2d 1024 (2012).

To determine whether the medical exemption in RCW 46.61.5055 applies, the trial court would need to make factual findings regarding the defendant's medical conditions and the consequences of serving jail time. We recognize that the municipal court did not explicitly make such factual findings. However, the trial court did expressly find that Hulet's doctor was

---

deferred, the court shall state in writing the reason for granting the suspension or deferral and the facts upon which the suspension or deferral is based.

credible. Given the trial court's credibility determination, the factual assertions in the doctor's affidavit can be taken as the factual basis for the trial court's conclusions. Therefore, the affidavit from Hulet's physician provides a sufficient factual basis to determine whether the trial court erred in applying the medical exemption in RCW 46.61.5055 to Hulet's case.

Hulet's physician's affidavit, as it relates to Hulet's medical condition, establishes that Hulet has chronic degeneration of lumbar discs, anxiety and depression. Based on the affidavit, the consequences of serving jail time "would likely result in aggravation of his lumbar disability from sleeping on a poor quality bed/cot" and, through the risk of losing custody of his daughter, "may cause further emotional despair resulting in decompensation of his anxiety/depression condition." CP at 35-36. As applied to these facts, the municipal court did not err by concluding that the medical exemption did not apply in Hulet's case.

First, the likely "aggravation" of Hulet's lumbar disability does not establish a "substantial risk" to Hulet's physical well-being. The aggravation that Hulet would *likely* suffer could be as minor as a minor increase in pain that could be treated through the jail medical staff. Hulet failed to produce any evidence proving otherwise. Therefore, the municipal court did not err by concluding that Hulet's chronic degeneration of lumbar discs did not warrant suspending jail time under the medical exemption in RCW 46.61.5055.

Second, the effect of serving jail time on Hulet's mental well-being is a secondary, not direct consequence of serving jail time. Any "emotional despair resulting in decompensation of his anxiety/depression condition" would be caused by the risk of losing custody of his daughter to his daughter's mother. The effect of jail time on a defendant's custody of his child is a risk always associated with being required to serve a jail sentence. Nothing in RCW 46.61.5055

15

provides an exemption to the mandatory minimum sentences for DUI based on the potential effect of a defendant's custody of his child. Therefore, the municipal court did not err in concluding that Hulet's anxiety and depression did not warrant suspending jail time under the medical exemption in RCW 46.61.5055.

Hulet also argues that the municipal court did not apply the correct statutory language. To suspend or defer the jail time, the municipal court had to "find[ ] that the imposition of this mandatory minimum sentence would impose a substantial risk to the offender's physical or mental well-being." RCW 46.61.5055(2)(b)(i). At the sentencing hearing, the municipal court stated, "I have to find in order to allow Mr. Hulet to serve jail time elsewhere other than in the jail is that substantial harm *would come* to Mr. Hulet for serving jail time. . . . I do not find that substantial harm *will come* to Mr. Hulet from serving jail time. . . ." CP at 480. Hulet argues that the court's statement is a misstatement of the law, which requires only a finding of risk not actual harm.

There is a difference between substantial risk and certainty of harm, but any prediction of future harm is necessarily an assessment of risk. Although the municipal court stated the standard differently, the difference between finding that incarceration "would impose a substantial risk to the offender's . . . well-being," and that incarceration would cause substantial harm is insignificant. Br. of Appellant at 39. There is no indication that the municipal court was operating under the misunderstanding that it could grant the medical exception only if it could predict future harm with certainty.

Hulet further argues that the municipal court erred in refusing to convert part of his sentence to EHM under the medical exception based on an incorrect belief that a partial

16

suspension of the sentence for medical reasons was not permissible. Referring to the earlier proceeding in which Hulet was sentenced for his 2010 DUI, the municipal court stated, "I understand that Thurston County District Court fashioned something indicating that seven days was appropriate and the balance was not, I don't believe I can do it that way. So, I do not find that that is valid." CP at 480. Hulet argues that the municipal court incorrectly assumed that a partial conversion or suspension of the sentence (as ordered by Thurston County) was not allowed, and that it operated only as an all or nothing exception.

However, it does not appear that the municipal court sentenced Hulet based on the incorrect all or nothing approach. Instead, the municipal court's explanation was merely an expression of its disagreement with the Thurston County District Court's decision that the medical exception was satisfied by the evidence provided by Hulet. The municipal court twice stated that the documentation provided by Hulet did not satisfy the medical exception. If the municipal court ruled that the exception was not met (the mandatory minimum sentence did not create a substantial risk of physical or medical harm), no amount of the mandatory minimum sentence could be suspended.

Finally, Hulet contends that the municipal court rejected the medical exemption not on the merits but because Hulet was a three-time DUI offender. The record does not support Hulet's contention. Hulet takes the court's statement that "I can't have somebody with a third DUI and with serving no jail time" out of context. Br. of Appellant at 42; *see* CP at 483. The court made the statement after the sentencing was completed. The court properly sentenced Hulet based on only one prior DUI notwithstanding the court's reference to Hulet having three DUIs.

4. Consideration of Good Time

Hulet next argues that the municipal court abused its discretion by "impos[ing] what the court considers the 'most likely' sentence based on the availability of 'good time.'" Br. of Appellant at 41. We agree that a sentencing court may not calculate good time credit in setting the length of the sentence; good time plays no role until confinement begins and credits are earned, and there is no guaranty credits will be earned. *State v. Fisher*, 108 Wn.2d 419, 429 n.6, 739 P.2d 683 (1987) (holding that it was improper for the court to impose an exceptional sentence because credit for good behavior would make the length of the sentence inadequate for the offenses committed).

However, we disagree with Hulet that the municipal court considered good time in setting his sentence. After the municipal court announced the sentence, Hulet inquired whether there was any possibility for work release. In response, the municipal court refused to allow work release and reiterated that Hulet must serve the remaining 44 days of his sentence in custody followed by 90 days on EHM. The court then remarked that if Hulet behaves himself in jail, "he will get [one-third] off of that for good time, but that is between him and the jail, so most likely, it will be 30 days, rather than 44." CP at 481.

A court abuses its discretion when it *relies* on good time to set the sentence. The municipal court did not do that here. We hold that the municipal court's mere reference to good time and the possibility that Hulet may serve less time than ordered was not improper. Accordingly, Hulet's argument fails.

We granted discretionary review of Hulet's appeal on two specific, limited issues: his RALJ 5.4 motion and his sentencing. Because the lost or damaged records are not significant or

No. 43059-2-II

material to his appeal, Hulet was not entitled to a new trial under RALJ 5.4. Further, the municipal court did not err in imposing Hulet's sentence.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, J.

_____
Penoyar, J.P.T.

19