IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31792-7-III |
| | ) | Consolidated with |
| Respondent, | ) | No. 32576-8-III |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH R. SCRIBNER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| _____ | ) | |
| In re Personal Restraint Petition of: | ) | |
| | ) | |
| KEITH R. SCRIBNER, | ) | |
| | ) | |
| Petitioner. | ) | |

BROWN, J. — Keith Scribner appeals his convictions for (1) false claim or proof
and (2) attempted first degree theft related to his filing an excessive insurance claim for
his mother's damaged awning. He contends ineffective assistance of counsel and
instructional error are reversible errors. In his consolidated personal restraint petition
(PRP), Mr. Scribner alleges newly discovered evidence shows his medical condition
caused him to be unable to recall events with specificity, warranting a new trial. We
reject his contentions and decide his PRP lacks merit. Accordingly, we deny Mr.
Scribner's PRP and affirm.

No. 31792-7-III cons. w/ 32576-8-III
*State v. Scribner* cons. w/ *In re PRP of Scribner*

## FACTS

The substantive facts supporting Mr. Scribner's convictions are not challenged for insufficiency. Generally, the evidence showed in 2008 Mr. Scribner arranged to purchase Scott Starkey's home (his next door neighbor) for his mother, Marilyn Warsinske. After a January 2009 snow storm damaged her deck awning, Ms. Warsinske, at Mr. Scribner's urging, reported the loss to Liberty Mutual Insurance. In August 2009, Mr. Scribner submitted a $203,000 insurance claim for loss, representing the awning as having covered the entire deck and more than twice the size of the pre-loss awning.

Critical to the outcome, on January 11, 2010 Mr. Scribner gave insurance adjusters Trevor Evans and Ben Steele building plans depicting a 320 square foot awning. He did not disclose the plans had been made four months before the loss to replace the existing smaller, and much less expensive awning that existed and was later damaged. Later, Mr. Scribner submitted $195,586 and $213,815 bids, apparently based on the plans.

Next in importance, in February 2010 while looking for photographs, Mr. Evans asked Mr. Scribner if any appraisal had been done for the home purchase. Mr. Scribner denied any existed, although he had indeed arranged for and received an appraisal. Mr. Steele later discovered an aerial photo in March 2010 showing the smaller awning. Then, special investigator Traci Johnson located Mr. Starkey for photographs and the insurance company located the denied appraisal done in Mr. Scribner's presence. In

2

October 2010, Liberty Northwest denied the claim based on its finding Mr. Scribner had misrepresented the awning size.

The State charged Mr. Scribner with submitting a false claim or proof to an insurance company and attempted first degree theft. The information specified Mr. Scribner committed each of the two charged crimes during the period of time "from July 31, 2009 to October 13, 2010." Clerk's Papers (CP) at 1-2. The charging period was from the date the insured made the claim (July 31, 2009) to the date Liberty Northwest denied the claim (October 13, 2010).

During trial, Ms. Johnson testified about her interview with Ms. Warsinke. Ms. Warsinke answered some of Ms. Johnson's questions, but she refused to answer others. When the prosecutor asked Ms. Johnson about this, Mr. Scribner's counsel unsuccessfully objected on hearsay grounds. On the next day of trial, the prosecutor asked Mr. Steele about an e-mail exchange that he had with Ms. Johnson about Ms. Warsinke's interview. Via e-mail, Ms. Johnson told Mr. Steele, "Yesterday did not go well. She hardly answered any questions. It was really a waste of time." Report of Proceedings (RP) at 811. Mr. Steele replied, "[D]id she really not know anything . . . was she evading?" RP at 811. Ms. Johnson responded, "[E]vading, definitely." RP at 812. Defense counsel did not object to the reading of this e-mail. The e-mail was admitted as a defense exhibit because it also contained a statement from Ms. Johnson to Mr. Steele, informing him she chose not to show Ms. Warsinske photographs the

3

insurance company obtained showing the prior awning. Mr. Steele responded, "Keep them guessing." RP at 781.

The prosecutor asked Mr. Steele the purpose of Liberty Northwest denying Ms. Warsinke's claim. He answered, without objection, "It was denied on four counts: really", Late reporting, lack of cooperation, concealment or misrepresentation, and lack of coverage." RP at 731. To clarify, the prosecutor asked, without objection, "[Y]ou had just testified before that the coverage was denied for lack of coverage, late reporting, lack of cooperation and concealment or fraud, correct?" RP at 735. Mr. Steele responded, "Correct." RP at 736.

At the conclusion of testimony, defense counsel requested a jury unanimity instruction for each count pursuant to *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). In support, defense counsel argued two different acts could form the basis of false claims or proof and attempted first degree theft: Mr. Scribner's misrepresentation to Mr. Evans and Mr. Steele on January 11, 2010 regarding the size of the prior awning and Mr. Scribner's statement to Mr. Evans in February 2010 denying the existence of the appraisal. The State objected. The court instructed the parties to craft a *Petrich* instruction, but when they could not agree on the language, the court modified the to convict instructions by changing the charging period of July 31, 2009 through October 13, 2010 to specify the single date of January 11, 2010.

Defense counsel then objected to his own proposed instruction, instruction 15 (the to convict instruction on the underlying crime of first degree theft instead of

4

attempted first degree theft). This instruction contained the broader language of "July 31, 2009 to and including October 13, 2010" to convict Mr. Scribner of first degree theft. CP at 140. The court allowed the instruction because the "substantial step can be pinpointed at the [January 11, 2010] meeting, but your theft, the underlying crime, still has that range of dates that allows the state to argue this deception through these events." RP at 1134-35. Instruction 8 (to convict on false claims or proof) and instruction 12 (to convict on attempted first degree theft) both limit the occurrence date to January 11, 2010.

The jury found Mr. Scribner guilty as charged. He appealed and filed a PRP that this court consolidated with his appeal.

## ANALYSIS

### A. Ineffective Assistance of Counsel

The issue is whether Mr. Scribner was denied effective assistance of counsel based on instructional and evidentiary error. Many of Mr. Scribner's allegations are raised for the first time on appeal. Generally, we do not review instructional error allegations that were not presented to the trial court unless the alleged error involves a manifest error affecting a constitutional right. *State v. Scott,* 110 Wn.2d 682, 684, 757 P.2d 492 (1988). Ineffective assistance of counsel is a manifest error affecting a constitutional right and so we must review Mr. Scribner's claim even if it is raised for the first time on appeal. *State v. Brown,* 159 Wn. App. 1, 17, 248 P.3d 518 (2010) (citing RAP 2.5).

5

The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to prevail on an ineffectiveness claim, the defendant must prove (1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance. *Id.* at 687. The deficient performance and prejudice showings are conjunctive, and this court may resolve an ineffective assistance claim against a defendant failing to make the necessary showing on either. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In deciding whether counsel's performance was deficient, we strongly presume counsel provided proper, professional assistance and "will not find deficient representation if counsel's actions were tied to a legitimate strategic or tactical rationale." *State v. Saunders*, 120 Wn. App. 800, 819, 86 P.3d 232 (2004) (citing *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 117 (1991)).

First, Mr. Scribner contends his defense counsel was deficient in proposing instruction 15 relating to first degree theft when the State did not charge him with first degree theft. Generally, review of such contention "is precluded under the invited error doctrine," however, "where the error is the result of ineffective assistance of counsel, review is not precluded." *In re Haghighi*, 178 Wn.2d 435, 446-47, 309 P.3d 459 (2013). The State concedes defense counsel's offering of a to-convict jury instruction on an uncharged crime may amount to deficient performance, but argues such error was not prejudicial.

6

The error of offering an uncharged means as a basis for conviction is prejudicial only if it is possible the jury might have convicted the defendant under the uncharged alternative. *State v. Doogan*, 82 Wn. App. 185, 189-190, 917 P.2d 155 (1996). Here, the jury did not convict Mr. Scribner of first degree theft. Rather, the guilty verdict forms explicitly show the jury found him guilty of false claim or proof and attempted first degree theft. While Mr. Scribner argues the jury may have been confused what offense the State charged him with, the record shows it was mentioned repeatedly during trial what were the exact charges. "One can always speculate about fanciful ways that an error might have affected the final verdict." *State v. Coristine*, 177 Wn.2d 370, 396, 300 P.3d 400 (2013) (Gonzalez, J., dissenting). But here, no reasonable possibility exists the jury convicted Mr. Scribner of an uncharged crime; thus, Mr. Scribner cannot show prejudice. Without this prong of an ineffective assistance of counsel claim, Mr. Scribner's claim fails. *See Strickland*, 466 U.S. at 687 (in order to prevail on an ineffectiveness claim, the defendant must show deficient performance and prejudice).

Mr. Scribner alternatively argues instruction 15 denied him his constitutional rights to jury unanimity and due process because it did not have the same specificity of dates as the other instructions. As discussed, the invited error doctrine generally precludes challenging a jury instruction proposed by the appellant. However, defense counsel proposed the instruction, then unsuccessfully challenged the instruction because it would implicate jury unanimity. In such cases, our Supreme Court has held, "we recognized an exception to [the] general doctrine of invited error . . . . '[t]he fact that

7

[the petitioner] proposed . . . the . . . instruction is no bar to his challenge to it, for he also proposed a curative instruction that was not given and, thus, did not invite the error that he complains of now.'" *State v. Vander Houwen*, 163 Wn.2d 25, 37, 177 P.3d 93 (2008) (quoting *State v. Studd*, 137 Wn.2d 533, 552, 973 P.2d 1049 (1999)).

In Washington, a jury may convict a criminal defendant only if the members of the jury unanimously conclude that the defendant committed the criminal act with which he or she was charged. *Petrich*, 101 Wn.2d at 569. A defendant's right to a unanimous verdict is rooted in the Sixth Amendment to the United States Constitution and in article I, section 22 of the Washington Constitution. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). Where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with solely one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the charged crime. *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991); *Petrich*, 101 Wn.2d at 572. The "jury must be unanimous as to *which* act or incident constitutes a particular charged count of criminal conduct." *State v. Borsheim*, 140 Wn. App. 357, 365, 165 P.3d 417 (2007).

The determination of whether a unanimity instruction was required turns on whether the prosecution constituted a "multiple acts case." *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009) (emphasis omitted). A multiple acts prosecution occurs when "several acts are alleged and any one of them could constitute the crime charged." *Kitchen*, 110 Wn.2d at 411. For example, the prosecution for a single count

of rape based on evidence of multiple, separate acts, "each of which is capable of satisfying the material facts required to prove" the charged crime, constitutes a multiple acts case. *Bobenhouse*, 166 Wn.2d at 894; *see also Kitchen*, 110 Wn.2d at 405-06, 411. Thus, in multiple acts cases, either (1) the State must elect a specific act on which it will rely for conviction or (2) the trial court must instruct the jury that it must unanimously agree that a specific criminal act has been proved beyond a reasonable doubt. *Bobenhouse*, 166 Wn.2d at 893; *Noltie*, 116 Wn.2d at 843; *Petrich*, 101 Wn.2d at 572. The failure of the State to elect a specific act or the trial court's failure to issue a unanimity instruction in a multiple acts case "is constitutional error. 'The error stems from the possibility that some jurors may have relied on one act or incident and some [jurors a different act], resulting in a lack of unanimity on all of the elements necessary for a valid conviction.'" *Bobenhouse*, 166 Wn.2d at 893 (alteration in original) (quoting *Kitchen*, 110 Wn.2d at 411).

We review the failure to give a multiple acts unanimity instruction for constitutional harmless error. *Bobenhouse*, 166 Wn.2d at 893. Such an error is not harmless unless "'a rational trier of fact could find that each incident was proved beyond a reasonable doubt.'" *State v. Camarillo*, 115 Wn.2d 60, 65, 794 P.2d 850 (1990) (quoting *State v. Gitchel*, 41 Wn. App. 820, 823, 706 P.2d 1091 (1985)).

Here, an election of a specific act exists. The instructions as a whole informed the jury that in order to find Mr. Scribner guilty of false claims or proof and attempted first degree theft, it had to conclude Mr. Scribner misrepresented the size of the awning

9

to Mr. Evans and Mr. Steele on January 11, 2010. This was clearly specified in the to convict instructions on these offenses (8 and 12). Instruction 15 did not conflict with instructions 8 or 12; rather, it was superfluous. The jury did not ask any questions, and when polled all agreed that the verdict forms represented their individual and unanimous verdicts. The remaining jury instructions and the corresponding verdict forms combine to show instruction 15 did not impact Instructions 8 and 12.

Moreover, any unanimity problem was harmless error. Substantial evidence established Mr. Scribner knowingly made a material misrepresentation when he told Liberty Northwest the awning destroyed was a large elaborate awning costing hundreds of thousands of dollars to adequately replace. Mr. Starkey, the prior homeowner, testified the awning was hand-built by him at a cost of approximately $300 and that it covered less than half the deck. The photographic exhibits, appraisal, and testimony established the prior awning did not cover the entire deck. A rational juror considering this evidence could solely conclude Mr. Scribner lied. Mr. Scribner lived next door to the awning for several years and visited his mother's home often. Mr. Scribner discovered the awning had collapsed in January 2009. Given all, we conclude Mr. Scribner was not prejudiced by any perceived deficiency when his counsel proposed a superfluous jury instruction. The jury instructions properly limited the jury to convict for each crime. Instruction 15 was unnecessary, but harmless and, therefore, not a manifest constitutional error.

10

Second, Mr. Scribner contends his counsel was ineffective by failing to object to testimony showing Ms. Warsinske was evasive and that Mr. Scribner engaged in fraud. Mr. Scribner raises these arguments for the first time on appeal in the context of his ineffective assistance of counsel argument, rather than in the context of a properly preserved challenge to the trial court's discretionary evidentiary ruling. Thus, Mr. Scribner must show not only that his counsel's performance was deficient but also that this deficient performance prejudiced the trial's outcome. *Strickland*, 466 U.S. at 686. Mr. Scribner fails to establish resulting prejudice.

"'Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant because it invad[es] the exclusive province of the [jury].'" *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009) (internal quotation marks omitted) (alterations in original) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)). Admitting impermissible opinion testimony regarding the defendant's guilt may be reversible error because it violates a defendant's constitutional right to a jury trial, including the independent determination of the facts by the jury. *Demery*, 144 Wn.2d at 759. Thus, witnesses may not offer opinions on the defendant's guilt, either directly or by inference. *King*, 167 Wn.2d at 331 (citing *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). Whether testimony is an impermissible opinion on guilt or a permissible opinion embracing an "ultimate issue" will generally depend on the specific case circumstances, including the type of witness involved, the specific nature of the

11

testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

Testimony not directly commenting as to personal belief of the defendant's guilt or the veracity of a witness is helpful to the jury, and testimony based on inferences from the evidence is not improper opinion testimony. *State v. Blake*, 172 Wn. App. 515, 528, 298 P.3d 769 (2012), *review denied*, 177 Wn.2d 1010 (2013). "The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." *Heatley*, 70 Wn. App. at 579. And constitutional error, if any, is harmless if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. *See State v. Quaale*, 182 Wn.2d 191, 218, 340 P.3d 213 (2014) (discussing constitutional harmless error as applied to improper opinions on guilt).

Mr. Scribner argues his counsel provided ineffective assistance when he failed to object to a statement by Ms. Johnson to Mr. Steele via e-mail that Ms. Warsinske was "evading." RP at 812. Assuming the word "evading" is a comment on witness veracity, the statement was made in an email introduced by the defense because the email contained a statement from Ms. Johnson to Mr. Steele informing him she chose not to show Ms. Warsinske the photographs obtained showing a smaller awning. Mr. Steele responded, "Keep them guessing." RP at 781. Defense counsel chose to introduce this e-mail chain to show the insurance company was being deceptive. This is a tactical decision on behalf of defense counsel. We "will not find deficient representation if

12

counsel's actions were tied to a legitimate strategic or tactical rationale." *Saunders,* 120 Wn. App. at 819. Thus, Mr. Scribner fails to establish ineffective assistance. Moreover, any error outside the context of an ineffective assistance of counsel claim would be harmless under *Quaale,* 182 Wn.2d at 218. The overwhelming evidence offered by the State showing Mr. Scribner filed a false claim for a deck cover that did not previously exist would not have been undermined by a sustained objection to the e-mail.

Next, Mr. Scribner complains his counsel was ineffective for failing to object to Mr. Steele's testimony that Liberty Northwest denied his claim based on fraud. He unpersuasively argues this was inadmissible opinion testimony as to his guilt. Mr. Steele's testimony regarding why the claim was denied was part of the chronology of events that assisted the jury in understanding the case. The jury heard testimony throughout the trial regarding Mr. Scribner's actions and the jury was advised in opening statements the State charged Mr. Scribner with filing a false claim and attempted theft. Officers often similarly testify in criminal trials about why they arrested a defendant. Even assuming the statement was inadmissible and defense counsel was deficient for not objecting, Mr. Scribner cannot establish prejudice. The State's overwhelming evidence showed Mr. Scribner filed a false claim for a nonexistent deck cover, and the court would not have sustained an objection to Mr. Steele's consistent testimony. Given all, we conclude Mr. Scribner fails to show manifest constitutional error based on ineffective assistance of counsel, and while his trial was not perfect, it was fair.

13

## C. PRP

Mr. Scribner, in his PRP, argues newly discovered evidence shows he lacked the mental capacity to remember the deck cover size before filing the insurance claim.

Under RAP 16.4(a), a petitioner may obtain relief by filing a PRP demonstrating the petitioner is under a "restraint" and the restraint is unlawful. A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, is confined, is subject to imminent confinement, or is under some other disability resulting from a judgment or sentence in a criminal case. RAP 16.4(b). "Restraint" includes the continuing effects of an already-served unlawful confinement. *In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 670, 675 P.2d 209 (1983).

Initially, we note the sentencing court ordered 240 hours of community service, 15 days of home arrest, and $7,200 in legal financial obligations, all completed. Mr. Scribner fails to explain how he is currently under restraint. Nevertheless, we assume he considers himself under the catchall "some other disability resulting from a judgment or sentence in a criminal case" to establish restraint. RAP 16.4(d).

To obtain PRP relief Mr. Scribner must show either constitutional error resulting in actual and substantial prejudice or nonconstitutional error resulting in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-13, 792 P.2d 506 (1990).[1] Additionally, Mr. Scribner must support his error claims with a statement of

---

[1] Mr. Scriber argues he should not be held to the complete miscarriage of justice standard because he is requesting relief based on newly discovered evidence. (Petitioner's Reply Br. at 13 n.2) Solely constitutional issues are reviewed under the

facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations; he cannot rely solely on conclusory allegations. RAP 16.7(a)(2); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also Cook*, 114 Wn.2d at 813-14.

Mr. Scribner requests relief based on a magnetic resonance imaging (MRI) performed after he was sentenced. He argues the MRI shows brain damage affecting his ability to recall facts about the prior awning and the appraisal. Mr. Scribner chose at trial to not introduce evidence he was mentally impaired. He made this decision to prevent the State from presenting evidence that in a prior disability claim based on carbon monoxide brain damage, the State found Mr. Scribner not impaired.

To obtain PRP relief based on a claim of newly discovered evidence under RAP 16.4(C)(3), the petitioner must show the new evidence (1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. *In re Pers. Restraint of Lord*, 123 Wn .2d 296, 319-20, 868 P.2d 835 (1994). When one factor is absent, we need not consider whether the other factors are present. *State v. Macon*, 128 Wn.2d 784, 803-04, 911 P.2d 1004 (1996).

While several of the above factors would be difficult for Mr. Scribner to establish, the third factor is particularly problematic. Mr. Scribner consciously chose not to raise an impairment defense. To now inconsistently claim he's found impairment evidence

---

actual and substantial prejudice standard. *In re Brett*, 142 Wn.2d 868, 874, 16 P.3d 601 (2001).

and it could not be discovered before trial lacks persuasiveness. Moreover, this argument, like some of his other arguments, implicates the invited error doctrine. Without a showing of this factor, we need not discuss this contention further. *Macon*, 128 Wn.2d at 803-04.

Because Mr. Scribner cannot show relief is warranted based on newly discovered evidence, he cannot show that the exclusion of this evidence amounted to a complete miscarriage of justice. Given all, Mr. Scribner fails to show he is unlawfully restrained. Thus, his PRP should be denied.

Affirmed. PRP denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

I CONCUR:

Lawrence-Berrey, J.

16

No. 31792-7-III

Fearing, J. — (concurrence) Keith Scribner complains his counsel was ineffective for failing to object to Ben Steele's testimony that Liberty Northwest denied his claim based on fraud. He argues that Steele's remark was inadmissible opinion testimony as to his guilt. I agree with the majority that Steele's testimony constituted factual, rather than, opinion testimony. Steele stated the ground on which the insurance company rejected payment rather than providing his view as to whether Keith Scribner committed fraud or was guilty of a crime.

I write separately because Ben Steele's testimony that Liberty Northwest denied the claim based on fraud should have been objected to by Keith Scribner's counsel and should have been excluded by the trial court on the ground of relevance. ER 401, 402. The insurance company's reason for denying Scribner's claim did not render Scribner's guilt for filing a false claim or attempting a theft more probable than not. I concur in the affirmation of the guilty verdict because the failure to object to the testimony did not prejudice Keith Scribner. Scribner fails to show ineffective assistance of counsel or a manifest constitutional error.

I CONCUR:

_____
Fearing, J.