IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32825-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANTHONY WAYNE BLAUERT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Anthony Blauert appeals his conviction for first degree

child molestation. He raises seven issues on appeal. These issues include sufficiency of

the evidence, lack of jury unanimity, and the State's witnesses improperly vouching for

the credibility of the victim/witness. We conclude that the State presented sufficient

evidence for the conviction, but that Mr. Blauert's right to a unanimous jury verdict was

violated, and the violation was not harmless. We therefore reverse Mr. Blauert's

conviction and remand for a new trial.[1]

---

[1] Because we reverse on the grounds that Mr. Blauert was deprived of jury
unanimity, we decline to address the remainder of the issues he raises.

FACTS

Jane Doe is the mother of D.D.,[2] who was born July 16, 2009. Ms. Doe was lifelong friends with Stephanie Blauert, and Mrs. Blauert occasionally babysat D.D. In the beginning of 2013, Mrs. Blauert babysat D.D. frequently, but further into the year Mrs. Blauert became more of a secondary babysitter for when Ms. Doe's family members were unavailable. In August 2013, Ms. Doe and D.D. moved in with Ms. Doe's friend, Nichole Burlingame.

On October 17, 2013, D.D. went to the restroom in their home and called for her mother to come help her. Ms. Doe helped D.D. wipe and D.D. winced, which she had never done. Ms. Doe asked her daughter where it hurt, and D.D. responded that her "no-no" hurt, which is how the two referred to genitalia. Report of Proceedings (RP) at 169. When Ms. Doe asked why it hurt, D.D. responded, "well, Andy touched me."[3] RP at 169. As D.D. said this, she pointed to her vagina. Ms. Doe asked if Mr. Blauert was wiping too hard, because Ms. Doe knew Mr. Blauert assisted Mrs. Blauert with babysitting. D.D. responded, "no, mom, we weren't wiping." RP at 169. Ms. Doe asked what they were

---

[2] For purposes of this opinion, we fictionalize the names of the mother, her friend, and the initials of her daughter to protect the daughter's anonymity.

[3] Mr. Blauert was the only person D.D. referred to as "Andy." RP at 171.

doing. D.D. responded that they were "playing," and that Mr. Blauert touched her in the "no-no" with his fingers. RP at 169.

After D.D. told her mother what had happened, her mother quickly walked out of the bathroom crying. Ms. Burlingame noticed Ms. Doe crying and asked what happened. Ms. Doe could not speak. Ms. Burlingame asked if she could go talk to D.D., and Ms. Doe told Ms. Burlingame that she could. Ms. Doe did not tell Ms. Burlingame what her daughter had said. D.D. came out of the bathroom, and Ms. Burlingame asked her what she had told her mom in the bathroom. D.D. said she told her mom that "Andy" had touched her "no-no" with his finger. RP at 179.

Ms. Doe called the police that day. After she called the police, Ms. Doe took her daughter to have her examined at a doctor's office. The police did not ask Ms. Doe to arrange the doctor's appointment—Ms. Doe decided to go herself. At the doctor's office, family nurse practitioner Tamera Nolan examined D.D. for signs of inappropriate contact. D.D. told Ms. Nolan, "my no no hurts," and "it feels like my heart is coming down." RP at 202. Ms. Nolan asked what happened, and D.D. said that "her and Andy were . . . playing and that he touched her inside." RP at 203. D.D. told Ms. Nolan that she climbed into bed with Mr. Blauert to cuddle. D.D. was the first to mention the name "Andy." RP at 204. D.D. also said that "it wasn't Dustin." RP at 203.

3

In November 2013, Ms. Doe took D.D. to a forensic interview at the request of the police. Karen Winston, a forensic child interview specialist, interviewed D.D. and recorded the interview.

The State charged Mr. Blauert with one count of first degree rape of a child. The trial court held a *Ryan*[4] hearing to determine whether Ms. Doe, Ms. Winston, and Ms. Burlingame could testify to D.D.'s disclosures pursuant to RCW 9A.44.120. Judge Sperline presided over the *Ryan* hearing. At the *Ryan* hearing, the prosecutor argued that Mr. Blauert molested D.D. on October 15, 2013. In his oral rulings, Judge Sperline stated that he believed D.D. would be found competent at trial, but formally reserved any competency issues for the actual trial. Judge Sperline also ruled that the very short period of time between when the incident allegedly occurred and when D.D. made her disclosures weighed in favor of finding that D.D.'s statements were reliable. Defense counsel did not object to any of Judge Sperline's oral rulings.

The day of trial, the State amended the information to include an alternative charge of first degree child molestation. During the pretrial motions in limine, the prosecutor conceded that the incident probably did not occur on October 15. The prosecutor also acknowledged that D.D. disclosed to Ms. Winston that Mr. Blauert had touched her

---

[4] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

twice—once when she was three, and once when she was four. The prosecutor stated, "[W]e're not alleging the earlier incident. Because she's not able to give very many details about it." RP at 106. The trial court asked defense counsel if there was a challenge to competency, and defense counsel responded that he was not challenging D.D.'s competency yet but might object to competency depending on how D.D. testified.

D.D. testified at trial. She testified that while in Mr. Blauert's home, Mr. Blauert pinched the outside of her front "no-no" once with his fingernails. RP at 157-58. She testified Mr. Blauert touched her under her clothes and that her pants were all the way down.

After the trial court excused D.D., defense counsel asked the trial court to consider competency "before any potential hearsay testimony [was] given." RP at 161. The trial court stated that defense counsel had conceded competency. Defense counsel argued that the trial court could find D.D. incompetent after D.D. had testified, and this would prohibit Ms. Doe and Ms. Burlingame from thereafter testifying to D.D.'s hearsay statements. The trial court and the prosecutor clarified that RCW 9A.44.120 only requires the child to testify in order for the hearsay statements to be admitted, and because D.D. testified, her competence now had no bearing on the statements' admissibility. Defense counsel stated that he was satisfied.

5

The State's next witness was Ms. Doe. Toward the beginning of Ms. Doe's testimony, the following exchange occurred:

[Prosecutor:] Is [D.D.] a truthful child?
[Ms. Doe:]    Yes.

RP at 165. Defense counsel did not object to the prosecutor's question. The trial court cut off Ms. Doe's testimony, asked counsel to approach the bench, and stated that it is highly improper to ask a witness to express an opinion about the truthfulness of another witness because it invades the province of the jury. The prosecutor argued Ms. Doe had knowledge of her daughter's reputation, and defense counsel stated he did not object because Ms. Doe testified as to her observations of her daughter. After the trial court's warning, the prosecutor then asked Ms. Doe whether her daughter ever makes up stories, to which Ms. Doe responded that she does. The prosecutor then asked Ms. Doe if she was able to tell when her daughter was making up a story, and Ms. Doe responded that she was.

Ms. Burlingame testified. The State then called Detective Ryan Green. During Detective Green's testimony, the following exchange occurred:

[Prosecutor:] And if you can estimate, how many of these types of cases—and when I say these types of cases, I'm talking about rape of a child, child molestation cases—have you handled in your career as a detective with the sheriff's office?
[Detective Green:] Probably close to a hundred, if not more.

6

[Prosecutor:] And in your experience, is it unusual for children to delay reporting?

[Detective Green:] Yes, most often so.

[Prosecutor:] It's unusual for them to delay reporting?

[Detective Green:] No. It's very common, and most of the time children have a hard time understanding what has happened to them, so they do delay in reporting.

RP at 189. Defense counsel did not object to this testimony.

After the trial court excused Detective Green and sent the jury out, the trial court advised counsel to review *State v. Smith*, 162 Wn. App. 833, 262 P.3d 72 (2011) before calling additional witnesses. The trial court stated the *Smith* case deals with improper prosecutorial vouching. The prosecutor stated that she was not going to ask Ms. Winston anything about D.D.'s credibility, but only ask Ms. Winston about her experience, training, education, job, how she had contact with D.D., and then publish the video of D.D.'s interview.

After lunch, the State called Ms. Nolan. Ms. Nolan testified that she examined D.D. on October 17, and D.D. said that "her and Andy were . . . playing and that he touched her inside." RP at 203. Ms. Nolan also testified that D.D. said that "it wasn't Dustin," and that D.D. was the first person to mention the name "Andy." RP at 203-04. Defense counsel did not object to these statements. The prosecutor also asked Ms. Nolan questions about D.D.'s demeanor, and the following exchange occurred:

7

[Prosecutor:] Did she give you any occasion to believe that she had a motive in making this—in telling you this?

[Ms. Nolan:] No.

[Prosecutor:] Did she appear to be forthcoming in her statements?

[Ms. Nolan:] Yes.

[Prosecutor:] Was there anybody else in the room while she made these statements?

[Ms. Nolan:] Her mother.

[Prosecutor:] And was her mother—what was her mother's role in this?

[Ms. Nolan:] Encouraging the patient to be honest and to be forthcoming and supporting her.

RP at 204. Defense counsel did not object to these questions. Finally, Ms. Nolan testified that she did not find any physical evidence to corroborate D.D.'s complaints.

After the trial court excused Ms. Nolan, the court brought up the prosecutor's previous question of whether D.D. "appeared to be forthcoming making her statements." RP at 210. The trial court advised the prosecutor again to read *Smith*, and stated that "[a]ny kind of statement that appears to vouch for the credibility of the witness is going to be a big, big problem." RP at 210. The prosecutor explained that her question was intended to ask, "[W]as [D.D.] hesitant." RP at 210. The trial court told the prosecutor that "we've had at least two witnesses express at least an indirect opinion about the credibility of [D.D.]." RP at 212.

8

Next, the State called Ms. Winston. The State played the interview tape for the jury. During the interview, the following exchange occurred between Ms. Winston and D.D.:

> Ms Winston: Hey [D.D.], how many times did Andy touch your pee?
> [D.D.]: Two times.
> Ms. Winston: Two times? How old were you the first time that Andy touched your pee?
> [D.D.]: Three.
> Ms. Winston: You were three? How old were you the last time he touched your pee?
> [D.D.]: Four.
> Ms. Winston: Four? Okay.

Ex. 3 at 11:36:05 -11:36:25.

The State rested. Mr. Blauert called Mrs. Blauert. Mrs. Blauert testified that she began babysitting D.D. around August 20, 2013, and babysat D.D. three days per week until September 6. Mrs. Blauert testified that she did not babysit D.D. for the next month and one-half, and then babysat D.D. one more time on October 15. Mrs. Blauert testified that she did not watch D.D. for the full day on October 15 because she had to work, and that Mr. Blauert's friend Dustin Cruz helped watch D.D. Mrs. Blauert testified that Mr. Blauert was in Portland, Oregon, getting a medical examination that day. The State conceded that Mr. Blauert was not at his home when D.D. was there on October 15.

9

Mr. Blauert also called Mr. Cruz. Mr. Cruz testified that he watched D.D. until around 7:00 p.m. to 7:15 p.m. on October 15, and then D.D. was picked up. Mr. Cruz testified Mr. Blauert arrived home between 8:00 p.m. and 8:15 p.m.

The trial court instructed the jury that in order to find Mr. Blauert guilty of the alternative crime of child molestation, it must find "[t]hat between July 1, 2013 and October 23, 2013, both days inclusive, the defendant had sexual contact with [D.D.]." Clerk's Papers (CP) at 30. The State did not elect the specific act on which the jury should rely in its deliberations. The trial court did not give a *Petrich*[5] instruction.

The jury acquitted Mr. Blauert of first degree rape of a child, but convicted him of first degree child molestation. After the trial, Judge Sperline filed findings of fact and conclusions of law from the pretrial *Ryan* hearing. Mr. Blauert appeals.

## ANALYSIS

A. *Sufficiency of the evidence*

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the

---

[5] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007

sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). This court's role is not to reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Here, Mr. Blauert only challenges the sufficiency of the State's evidence insofar as the jury found he committed the crime within the charging period and had sexual contact with D.D.

1.     Sufficiency of evidence supporting the jury's finding that the crime occurred within the July 1 to October 23 charging period

Mr. Blauert claims that the State failed to produce sufficient evidence to sustain the added element: that the crime occurred within the charging period, which was

(2014).

11

between July 1, 2013, and October 23, 2013. The charging period is not a statutory

element of first degree child molestation. *See* RCW 9A.44.083. However, under the law

of the case doctrine, "jury instructions not objected to become the law of the case." *State*

*v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). The State assumes the burden to

prove beyond a reasonable doubt any elements added to the to-convict instructions, even

if those elements do not have a statutory basis. *Id.* In the event of a sufficiency of

evidence challenge on appeal, the sufficiency of evidence to sustain the verdict is

determined with reference to the instructions. *Id.* at 103 (quoting *Tonkovich v. Dep't of*

*Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948)).

The reviewing court looks at the evidence at whatever point the sufficiency

challenge is raised. *State v. Jackson*, 82 Wn. App. 594, 608-09, 918 P.2d 945 (1996).

The defendant is not barred from claiming insufficiency at a late stage of the proceedings,

but the court will use the most complete record available at the time the claim is made.

*Id.*

Here, if this court were to solely examine the State's evidence, there would be

insufficient evidence to sustain the jury's finding that Mr. Blauert molested D.D. within

the charging period. None of the State's witnesses could say when the act occurred. D.D.

testified that she could not remember when it happened. Ms. Doe testified that the

Blauerts babysat D.D. throughout the entirety of 2013, and babysat D.D. before she and her daughter ever moved in with Ms. Burlingame. Ms. Doe and Ms. Burlingame testified that D.D. never told them when Mr. Blauert touched her. D.D. never made any statements to this effect in her forensic interview.

However, in determining whether the evidence is sufficient to sustain the conviction, this court uses the most complete record available at the time the claim is made. This includes the defendant's evidence. Mr. Blauert called Mrs. Blauert at trial, who testified that she only babysat D.D. from August 20 to September 6, and once more on October 15. The charging period encompasses these dates. Mrs. Blauert also testified that Mr. Blauert was occasionally present when she babysat D.D. Viewing the evidence, as this court must, in the light most favorable to the State and drawing all reasonable inferences in favor of the State and interpreting them most strongly against Mr. Blauert, the evidence is sufficient to support the jury's finding that Mr. Blauert molested D.D. between July 1, 2013 and October 23, 2013, as required by the law of the case.

2. Sufficiency of the evidence supporting the jury's finding that Mr. Blauert had sexual contact with D.D.

A person commits first degree child molestation when that person "knowingly causes another person under the age of eighteen to have sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at

13

least thirty-six months older than the victim." RCW 9A.44.083. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

"Offenses such as child molestation or indecent liberties reasonably require a showing of sexual gratification because the touching may be inadvertent." *State v. Gurrola*, 69 Wn. App. 152, 157, 848 P.2d 199 (1993). The jury may infer sexual gratification if an adult male with no caretaking function touches the intimate parts of a child, but additional evidence is needed if the male has a caretaking function. *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991).

Mr. Blauert argues this case is like *Powell*, where this court found that the evidence was insufficient to find that Mr. Powell's purpose was achieving sexual gratification. *Id.* at 918. In *Powell*, a fourth grade girl sat on Mr. Powell's lap and Mr. Powell hugged her around the chest. *Id.* at 916. As Mr. Powell assisted her off his lap, he touched her buttocks and placed his hand on her underpants under her skirt. *Id.* On another occasion, while the girl was alone with Mr. Powell in his truck, he touched both her thighs. *Id.* On each of the occasions Mr. Powell only touched the outside of her clothing. *Id.*

14

This case is not *Powell*. Mr. Blauert helped babysit D.D., so additional evidence is needed to sustain Mr. Blauert's conviction other than the fact that he touched D.D.'s intimate parts. This additional evidence exists in the record. While in the Blauerts' home, Mr. Blauert pinched the outside of D.D.'s vagina with his fingernails. Mr. Blauert touched her under her clothes. Mr. Blauert had pulled her pants all the way down. Ms. Doe asked her daughter if Mr. Blauert was wiping too hard, and D.D. responded, "[N]o, mom, we weren't wiping," and that they were "playing." RP at 169. Mrs. Blauert was at the store when this all happened. These facts are not "susceptible of innocent explanation." *Powell*, 62 Wn. App. at 918. We conclude that the State presented sufficient evidence to support the jury's finding that Mr. Blauert committed the crime within the charging period and had sexual contact with D.D.

B.     *Jury unanimity*

Mr. Blauert contends, for the first time on appeal, that the trial court should have instructed the jury that it must unanimously agree on which underlying act gave rise to criminal liability for the one count the State charged. A defective verdict that deprives the defendant of a unanimous verdict invades the fundamental constitutional right to a trial by jury. The issue may, therefore, be raised for the first time on appeal. *E.g.*, *State v. Bobenhouse*, 166 Wn.2d 881, 892 n.4, 214 P.3d 907 (2009).

15

The Washington Constitution gives criminal defendants the right to a unanimous jury verdict. CONST. art. I, § 21. In cases where the State presents evidence of multiple criminal acts and any one of these acts could constitute the crime charged, the jury must unanimously agree on the same act that constitutes the crime in order to convict the defendant. *Petrich*, 101 Wn.2d at 572. To ensure jury unanimity when multiple acts could relate to one charge, "either the State [must] elect the particular criminal act upon which it will rely for conviction, or . . . the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). Election of an act may be established if the State's closing argument, when considered with the jury instructions and the charging documents, makes it clear which act or acts the State is relying on for each charge and there is no possibility that the jury could have been confused as to which act related to which charge. *State v. Bland*, 71 Wn. App. 345, 352, 860 P.2d 1046 (1993), *overruled in part on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007).

Constitutional error occurs if there is no election and no unanimity instruction is given. *Bobenhouse*, 166 Wn.2d at 893. The error stems from the possibility that some jurors may have relied on one act as the basis for convicting the defendant and other

jurors may have relied on a different act, resulting in a lack of unanimity on all of the elements necessary for a valid conviction. *Kitchen*, 110 Wn.2d at 411.

An exception exists when the evidence shows the defendant was engaged in a "continuing course of conduct." *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). In this situation, neither an election nor a unanimity instruction is required. *Id.* In determining whether the evidence supports multiple criminal acts or a continuing course of conduct, this court evaluates the facts in a commonsense manner considering (1) the time that elapsed between the criminal acts, and (2) whether the different acts involved the same parties, the same location, and the same ultimate purpose. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

1.      Deprivation of jury unanimity

This entire jury unanimity issue is caused by the 16-day overlap between the beginning of the charging period on July 1 and when D.D. turned four years old on July 16. The State alleged Mr. Blauert only committed one act of molestation. The jury heard evidence that the Blauerts babysat D.D. throughout the entirety of the charging period. The jury also saw the videotaped child interview with Ms. Winston in which D.D. stated that Mr. Blauert touched her twice—once when she was three, and once when she was four. At the pretrial motions in limine, the prosecutor acknowledged D.D.'s

17

statements that Mr. Blauert touched her twice. The trial court asked if D.D. was four years old during the entire charging period, and the prosecutor agreed. The prosecutor was mistaken. The prosecutor then told the trial court that the State was "not alleging the earlier incident. Because she's not able to give very many details about it." RP at 106.

On appeal, the State argues that neither an election nor a *Petrich* instruction was required because D.D. was four years old throughout the entire charging period in the to-convict instruction. Therefore, the State argues, it was factually impossible for the jury to convict Mr. Blauert based on the evidence that Mr. Blauert first touched D.D. when she was three. This might be a meritorious argument if the State's math were correct. However, the jury heard evidence that D.D. was born on July 16, 2009. Therefore, her fourth birthday was July 16, 2013, so she was in fact three years old for a portion of the charging period.

The State also argues that the prosecutor elected the second touching because the charging information and the to-convict instruction both designated the touching that occurred when D.D. was four years old. This is incorrect—both the charging information and the to-convict instruction only list the July 1 to October 23 charging period. The State also argues that the prosecutor elected the second touching when she emphasized the charging period during her closing argument and mentioned the August 20 to

18

September 6 time frame on rebuttal. This argument is still predicated on the same mathematical error—the charging period listed in the information and the to-convict instruction includes 16 days in which D.D. was still three years old, so this cannot be a valid election. While a prosecutor *can* make a valid election in closing argument, *Bland* requires the closing argument be taken together with the jury instructions and the charging documents so that there is *no* possibility that the jury could have been confused as to which act related to which charge. *Bland*, 71 Wn. App. at 352. Considering the State's closing argument and the jury instructions, we conclude there is a possibility that the jury was confused as to which act the State relied on for conviction.

Because the State charged one count and introduced evidence of two separate touchings within the charging period, Mr. Blauert was deprived of jury unanimity unless those two touchings were a continuous course of conduct. However, this court cannot perform a continuing course of conduct analysis given that no evidence relating to the first alleged touching exists other than D.D.'s statement in the forensic interview. This is the reason why the State did not charge the first allegation in the first place. The State knew this evidence was contained in the videotape, but decided to publish it to the jury anyway. The State then failed to elect the act on which the jury should rely, and did not propose a unanimity instruction. Here, like in *Petrich*, the jury saw evidence that multiple

19

"distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct." *Petrich*, 101 Wn.2d at 572. On this record, it is impossible to know which of the two acts was proved to the satisfaction of all of the jurors beyond a reasonable doubt. We conclude that Mr. Blauert was deprived of his right to a unanimous jury verdict.

### 2. Harmless error inquiry

Failure to give the *Petrich* instruction, when required, is reversible error unless the error is harmless beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990). "Thus in multiple acts cases the standard of review for harmless error is whether a 'rational trier of fact could find that each incident was proved beyond a reasonable doubt.'" *Id.* at 65 (quoting *State v. Gitchel*, 41 Wn. App. 820, 823, 706 P.2d 1091 (1985)).

In *Petrich* the error was not harmless due to the child's testimony. The victim was able to describe some of the acts with some detail and specificity, but other details were acknowledged "with attendant confusion as to date and place, and uncertainty regarding the type of sexual contact that took place." *Petrich*, 101 Wn.2d at 573. The error was not harmless. *Id.*

20

The reverse was true in *Camarillo*, where three separate touchings occurred and each was independently capable of supporting one count of indecent liberties. *Camarillo*, 115 Wn.2d at 63. At trial, the "boy's testimony was specific about what had occurred." *Id.* at 66-67. "There was no conflicting testimony which would have placed any reasonable doubt in the mind of a juror that the events did not happen as described by the boy." *Id.* at 71. The *Camarillo* court noted that the evidence presented was sufficient to establish each crime had occurred, there was no conflicting testimony, the defendant had a general denial defense, and the victim provided specific detailed testimony regarding each touching that occurred. *Id.* at 71-72. Ultimately, the *Camarillo* court determined that if the jury reasonably believed one incident occurred, all the incidents must have occurred. *Id.* at 70-71 (quoting *State v. Camarillo*, 54 Wn. App. 821, 828, 776 P.2d 176 (1989), *aff'd*, 115 Wn.2d 60). The error was harmless beyond a reasonable doubt. *Id.* at 72.

This case is more like *Petrich*. D.D. consistently described the second touching in specific detail and explained how Mr. Blauert pulled her pants down and touched her vagina with his finger when she was four years old. However, no other testimony or corroborating evidence supported her statement that Mr. Blauert touched her when she was three years old—which was still within the charging period. Like in *Petrich* and

21

unlike *Camarillo*, a rational juror could have entertained reasonable doubt as to whether the first touching actually occurred. We conclude the error here was not harmless beyond a reasonable doubt.

C. *Remedy*

Where an appellate court reverses a conviction for reasons other than insufficiency of the evidence, the proper remedy is to remand for a new trial. *See State v. Wright*, 165 Wn.2d 783, 802 n.11, 203 P.3d 1027 (2009). Consistent with our rulings in this case, we therefore reverse Mr. Blauert's conviction for first degree child molestation and remand for a new trial.

For the record, we note that the State concedes that the prosecutor committed error when she elicited testimony from witnesses concerning D.D.'s credibility. We agree. The State counters that the prosecutor's error was harmless. We express no opinion, other than we trust the same error will not reoccur. Mr. Blauert also raises a number of other issues. Because we reverse Mr. Blauert's conviction on the grounds that he was deprived of jury unanimity, we decline to address these issues. *See State v. Richie*, 191 Wn. App. 916, 920 n.1, 365 P.3d 770 (2015).

22

No. 32825-2-III
*State v. Blauert*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

23